IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

——————————————————— X

STATE OF NEW YORK, STATE OF ARIZONA,
STATE OF CALIFORNIA, STATE OF
CONNECTICUT, STATE OF ILLINOIS, STATE
OF MAINE, COMMONWEALTH OF
MASSACHUSETTS, STATE OF MINNESOTA,
STATE OF NEW HAMPSHIRE, STATE OF NEW
JERSEY, COMMONWEALTH OF
PENNSYLVANIA, DEPARTMENT OF
ENVIRONMENTAL PROTECTION, and STATE
OF VERMONT,

Case No.  07 CV 10632-BSJ

ECF Case

Plaintiffs,

v.

STEPHEN L. JOHNSON, in his official capacity as
Administrator of the U.S. Environmental Protection
Agency, and the U.S. ENVIRONMENTAL
PROTECTION AGENCY,

Defendants.

——————————————————— X

## <u>COMPLAINT</u>

The State of New York, the State of Arizona, the State of California, the State of

Connecticut, the State of Illinois, the State of Maine, the Commonwealth of Massachusetts, the

State of Minnesota, the State of New Hampshire, the State of New Jersey, the Commonwealth of

Pennsylvania, Department of Environmental Protection and the State of Vermont (collectively,

the "Plaintiff States"), each represented by and by authority of its State Attorney General, or, in

the case of the Commonwealth of Pennsylvania, Department of Environmental Protection, its

Chief Counsel, allege as follows:

## NATURE OF THE ACTION

1.  The Plaintiff States file this action against the United States Environmental Protection Agency (the "Agency") and its Administrator, Stephen L. Johnson (the "Administrator," and collectively with the Agency, "EPA") to invalidate EPA regulations that weaken the Toxics Release Inventory  ("TRI") program in violation of the Emergency Preparedness and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. §§ 11001-11050, the Pollution Prevention Act ("PPA"), 42 U.S.C. §§ 13101-13109, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559 & 701-706.[1]

2.  In general, the TRI program requires facilities that use and dispose of a wide variety of toxic chemicals in excess of certain reporting threshold levels to file annual reports.

3.  Those reports disclose, among other things, the amount of the chemicals released to the air, water and land and the maximum amount of the chemicals on site.

4.  Thus, TRI does not impose limits on the amount of pollution that a facility can emit, but instead simply requires that the facility report information concerning its toxic chemical use and disposal to EPA and the government of its home state.

5.  That information is made available to the public through an EPA internet database.

6.  From these simple foundations, TRI has become "one of the most powerful forces in empowering the federal government, state and local governments, industry, environmental groups and the general public to fully participate in an informed dialogue about the environmental impacts of toxic chemicals in the United States."  U.S. Environmental Protection Agency, Office of Environmental Information, *Economic Analysis of the Toxics Release*

---

[1]  A number of acronyms appear in this complaint.  For ease of reference, a list of them is annexed as Appendix A.

*Inventory Phase 2 Burden Reduction Rule*, docket no. EPA-HQ-TRI-2005-0073-4988 through -4997, at 5-1 (Sept. 22, 2006) (hereinafter, "*Economic Analysis (Final Rule)*").

7.  TRI has been at the heart of one of our nation's most successful voluntary pollution control efforts.

8.  Due to TRI, many companies have dramatically reduced their chemical use and release, in some cases by 50 percent or more.

9.  In the earliest years of the TRI program, between 1988 and 1994, nationwide releases of TRI chemicals decreased by 44 percent.  Releases of hydrochloric acid, for example, decreased by 55.4 percent, or over 266 million pounds, during that period.

10.  TRI information has also provided assistance in dealing with hazardous emergency situations such as along the Gulf Coast after Hurricane Katrina.

11.  According to defendant EPA, "TRI data have proved to be an important tool in environmental justice.  Communities that were once uninformed about the toxic chemical releases in their area now have access to that information."  U.S. Environmental Protection Agency, Office of Environmental Information, *How Are the Toxic Release Inventory Data Used? - government, business, academic and citizen uses*, at 8, EPA-260-R-002-004 (May 2003), *available at* New York Attorney General, *et al.*, Appendix of Sources Cited in the Comments on the TRI Burden Reduction Proposed Rule, Vol. 1, docket no. EPA-HQ-TRI-2005-0073-4553.1 (Jan. 12, 2006), Tab 3 at 8 (document submitted to EPA and available in rulemaking record at EPA headquarters but not added to internet docket database).

12.  In light of such uses of TRI information, EPA has concluded that "TRI data are of paramount importance to environmental protection."  U.S. Environmental Protection Agency, Office of Environmental Information, *Response to Comments: Toxics Release Inventory Phase 2*

*Burden Reduction Rule*, docket no. EPA-HQ-TRI-2005-0073-5008, at 14 (Dec. 18, 2006) (hereinafter, "*Response to Comments*").

13.  On December 18, 2006, however, EPA promulgated regulations that unlawfully increase TRI reporting thresholds and as a result unlawfully weaken TRI data reporting requirements.  *Toxics Release Inventory Burden Reduction Final Rule*, 71 Fed. Reg. 76932 (Dec. 22, 2006) (the "Final Rule" or the "2006 Regulations").

14.  This rulemaking violated the law in several ways.

15.  First, EPCRA only allows EPA to increase reporting thresholds if the new thresholds ensure that EPA will continue to obtain reporting on a "substantial majority" of the releases for *each* chemical subject to the new thresholds.

16.  EPA's own calculations show, however, that the increased reporting thresholds established by the Final Rule could eliminate *all* reporting of release quantities for at least 26 chemicals, and could eliminate fifty percent or more of the reporting of release quantities for at least 20 more chemicals.

17.  Since elimination of reporting for half or more of releases for dozens of chemicals does not preserve reporting on a majority of releases for each of those chemicals, let alone a "substantial majority," the Final Rule violates EPCRA.

18.  Second, EPA has increased reporting thresholds for many substances in one of the most dangerous categories of chemicals, the persistent, bioaccumulative and toxic ("PBT") compounds.

19.  For example, among these PBT chemicals is mercury, which is a potent neurotoxin.

20.  Almost seven years ago, in a previous TRI rulemaking on PBT chemicals, EPA concluded that it was "particularly important to gather and disseminate to the public relevant information on even relatively small amounts of releases and other waste management of PBT

chemicals." *Persistent Bioaccumulative Toxic (PBT) Chemicals; Final Rule*, 64 Fed. Reg. 58666, 58729/2-3 (Oct. 29, 1999).

21.  At that time, EPA rejected an increased reporting threshold of 500 pounds for waste management quantities of PBT chemicals because the information reported under that threshold would have been "insufficient for conducting analyses on PBT chemicals" and would have been "virtually useless" for communities interested in assessing the risk from such PBT chemicals. *Id.* at 58670/2

22.  EPA also concluded that the "additional waste management information on PBT chemicals is very important to communities because it helps them understand the quantities of EPCRA section 313 chemicals that are being transported through their communities." *Id.* at 58732/3-58733/1.

23.  In the 2006 Regulations, EPA has now undertaken  a 180-degree reversal, setting a reporting threshold of 500 pounds for waste management quantities of mercury and other PBT chemicals subject to certain conditions.

24.  As EPA suggested six years ago, this new reporting threshold will decrease the amount of information available concerning facilities' use of PBT chemicals and management of PBT chemical waste, and as a result will reduce citizens' ability to understand how much of such chemicals are used, and how much waste of such chemicals was generated, at facilities in their communities.

25.  Because EPA has not provided an adequate explanation for this reversal of position, the rulemaking for the 2006 Regulations was arbitrary and capricious.

26.  Third, EPA justifies the Final Rule as an effort to reduce reporting burdens for facilities subject to TRI requirements.

27.  EPCRA, however, does not require or even contemplate burden reduction as a factor to be considered in revising reporting thresholds.

28.  Moreover, even if reporting burden were a statutorily-recognized factor, EPA's burden reduction estimates are unreliable.

29.  For example, for most of the chemicals at issue, twenty-five percent of EPA's estimated burden reduction comes from savings in recordkeeping and mailing costs, but EPA explicitly states that recordkeeping requirements will remain the same, and provides no reason to conclude that mailing costs will vary.

30.  Because EPA's reporting burden rationale lacks adequate legal and factual foundations, the 2006 rulemaking is arbitrary and capricious.

31.  Fourth, as a further justification for the Final Rule, EPA asserts that the rule creates an incentive to reduce releases of pollutants to the environment because facilities may seek to reduce their releases in order to qualify for the new alternative reporting thresholds and thereby avoid full TRI reporting.

32.  As noted above, however, the obligation to report under TRI creates a well-documented incentive to reduce pollutant discharges, and EPA failed to analyze the extent to which the rule, by weakening the obligation to report, weakens that existing incentive to reduce pollution.

33.  EPA's consideration of possible increased incentives to reduce pollution without considering possible decreased incentives to reduce pollution renders its analysis arbitrary and capricious.

34.  In addition, in violation of the APA, 5 U.S.C. § 553(b), EPA failed to provide notice that the Final Rule would contain a 2,000 pound reporting threshold for releases.

35.  Because of these and other flaws in the rulemaking, the Plaintiff States respectfully request an order:  declaring that EPA is in violation of EPCRA, the PPA and the APA; invalidating the Final Rule; and requiring EPA to publish in the Federal Register a notice sufficient to inform entities that the Final Rule has been vacated and that the TRI reporting requirements in effect prior to January 22, 2007 will again be in effect.

## THE PARTIES

The Plaintiff States

36.  Plaintiff State of New York is a sovereign entity and brings this action to protect its own sovereign and proprietary rights, and as *parens patriae* on behalf of its affected citizens and residents.

37.  Plaintiff State of Arizona is a sovereign entity and brings this action to protect its own sovereign and proprietary rights, and as *parens patriae* on behalf of its affected citizens and residents.

38.  Plaintiff State of California is a sovereign entity and brings this action to protect its own sovereign and proprietary rights, and as *parens patriae* on behalf of its affected citizens and residents.

39.  Plaintiff State of Connecticut is a sovereign entity and brings this action to protect its own sovereign and proprietary rights, and as *parens patriae* on behalf of its affected citizens and residents.

40.  Plaintiff State of Illinois is a sovereign entity and brings this action to protect its own sovereign and proprietary rights, and as *parens patriae* on behalf of its affected citizens and residents.

7

41.   Plaintiff State of Maine is a sovereign entity and brings this action to protect its own sovereign and proprietary rights, and as *parens patriae* on behalf of its affected citizens and residents.

42.   Plaintiff Commonwealth of Massachusetts is a sovereign entity and brings this action to protect its own sovereign and proprietary rights, and as *parens patriae* on behalf of its affected citizens and residents.

43.   Plaintiff State of Minnesota is a sovereign entity and brings this action to protect its own sovereign and proprietary rights, and as *parens patriae* on behalf of its affected citizens and residents.

44.   Plaintiff State of New Hampshire is a sovereign entity and brings this action to protect its own sovereign and proprietary rights, and as *parens patriae* on behalf of its affected citizens and residents.

45.   Plaintiff State of New Jersey is a sovereign entity and brings this action to protect its own sovereign and proprietary rights, and as *parens patriae* on behalf of its affected citizens and residents.

46.   Plaintiff Commonwealth of Pennsylvania, Department of Environmental Protection is an agency of the sovereign Commonwealth of Pennsylvania and brings this action to protect the Commonwealth's sovereign and proprietary rights, and as *parens patriae* on behalf of the Commonwealth's affected citizens and residents.

47.   Plaintiff State of Vermont is a sovereign entity and brings this action to protect its own sovereign and proprietary rights, and as *parens patriae* on behalf of its affected citizens and residents.

The Defendants

48.  Defendant Stephen L. Johnson is sued in his official capacity as Administrator of EPA, a position that he has held, on either an acting or official basis, since on or about January 26, 2005.   By statute, the Administrator has power to administer the TRI program, including the authority to revise TRI reporting thresholds subject to certain limitations.  42 U.S.C. § 11023(f)(2).

49.  Defendant U.S. Environmental Protection Agency is the federal government agency headed by the Administrator.

## JURISDICTION AND VENUE

50.  This Court has jurisdiction over the subject matter of this action pursuant to the general federal question jurisdiction statute, 28 U.S.C. § 1331.

51.  Venue over this action is proper in this District pursuant to 28 U.S.C. § 1391(e)(3), which establishes venue in an action against an officer or agency of the United States in any judicial district in which one of the plaintiffs resides, if no real property is involved in the action. Plaintiff State of New York resides in this District.

## BACKGROUND

**The Importance of TRI Reporting**

52.  Since Congress enacted TRI in 1986, companies, states, citizens, the federal government and others have used TRI data to address health, safety and environmental issues.

53.  TRI data have provided a powerful and effective incentive for companies to achieve enormous reductions in pollution.  Once companies – and the public – learn exactly how much toxic chemicals companies store, generate and release, the companies often strive to reduce those amounts to improve their public image, to save money, or for other reasons.

54. EPA reported that, in the earliest years of the TRI program, between 1988 and 1994, nationwide releases of TRI chemicals were estimated to have declined by 44.1 percent, or, on information and belief, approximately 1.5 billion pounds.

55. The Monsanto Company reported that it reduced its toxic air emissions by over 90 percent between 1988 and 1992 in response to TRI.

56. The Eastman Chemical Company of Kingsport, Tennessee reported that it reduced its releases of TRI chemicals by 83 percent since 1988.

57. Dow Chemical is reported to have saved more than $10 million because of TRI-inspired efficiencies in its production activities.

58. States also use TRI data in a wide variety of ways, including:

    a. to improve and strengthen permitting programs;

    b. to identify enforcement targets;

    c. to aid in emergency prevention planning and response;

    d. to undertake environmental justice projects;

    e. to analyze toxic releases and risks;

    f. to spur state pollution control legislation and regulation; and

    g. to target technical assistance to TRI facilities.

59. In a 1999 survey assessment, 35 states – 71 percent of those responding – reported that they used TRI information to identify facilities for pollution prevention activities. *See* New York Attorney General, *et al.*, Appendix of Sources Cited in the Comments on the TRI Burden Reduction Proposed Rule, Vol. 2, docket no. EPA-HQ-TRI-2005-0073-4553.2 (Jan. 12, 2006), Tab 6 at 2 (document submitted to EPA and available in the rulemaking record at EPA headquarters but not added to internet docket database).

60. The New York State Department of Environmental Conservation ("NYS DEC") used TRI data to identify the 400 facilities that generate 95 percent of the state's toxic pollution, and then designated those facilities for priority in inspection, enforcement, monitoring and pollution-prevention planning.

61. On an ongoing basis, NYS DEC uses TRI data for a variety of purposes, including: (a) to aid in verifying whether facilities are complying with emission limits; (b) to assess facilities for the purpose of negotiating pollution reduction efforts or imposing additional or more stringent permit limits; (c) to assess facilities for the purpose of determining whether inspections are necessary; (d) to evaluate air pollution and accompanying health and environmental risk from emitting facilities; (e) to verify the accuracy of other state environmental databases; and (f) to evaluate facility emergency preparedness plans.

62. Local and statewide citizen groups in New York have used TRI to identify the location of facilities that use and release toxic chemicals and to assist in developing projects to address such pollution.

63. In California, on an ongoing basis, state agencies use TRI data for a variety of purposes. The Department of Justice uses TRI data as one tool to identify or investigate violations of California's Safe Drinking Water and Toxic Enforcement Act. Other uses of TRI data by California state agencies include documenting releases into the environment of chemicals that the agency is evaluating as part of a standard setting process, preparing reports regarding environmental management including pollution prevention reports and analyses of the state's hazardous waste generation and management patterns, and studying the discharge of toxic chemicals into water bodies.

64. The Connecticut Department of Environmental Protection ("CT DEP") has used TRI data in the formulation of strategic planning efforts to identify and implement assistance, inspection and enforcement initiatives.

65. On an ongoing basis, CT DEP uses TRI data for a variety of purposes, including (a) to assess facilities for the purpose of determining whether inspections are necessary; (b) to verify the accuracy of other state environmental databases; (c) to evaluate facility emergency preparedness plans; (d) to assess education and outreach prioritization; and (e) to inform and educate stakeholders about issues of concern within their community.

66. Local and statewide citizen groups in Connecticut have used TRI to identify the location of facilities that use and release toxic chemicals and to assist in developing projects to address such pollution.

67. The Minnesota Pollution Control Agency annually relies on TRI data in providing environmental assistance. Among other things, it has used TRI data (a) to identify and track candidates for adopting new pollution prevention technologies; (b) as an impetus to launch a volunteer fishing tackle exchange program after a major lead fishing tackle manufacturer was identified as a priority facility; and (c) in developing "good neighbor" agreements with facilities emitting TRI chemicals.

68. The State of Delaware used TRI information to identify a major dioxin disposal problem at a Dupont facility, and then negotiated remediation efforts which included a commitment by the facility to change its production processes to reduce its formation of dioxin by 90 percent.

69. Firefighters also use TRI data to protect themselves and the public from potentially dangerous releases caused by accidents or fires at chemical plants, refineries and other sites.

70. Local governments also use TRI data. The Louisville, Kentucky Metro Air Pollution Control Board adopted a plan to reduce toxic air emissions based on TRI and other data.

71. Community groups and average citizens use TRI data. In Richmond, California, for example, a citizens group teamed up with a statewide environmental organization to use TRI information to identify the area's 20 largest polluters, then negotiated with the largest polluter, a Chevron oil refinery, to achieve zero net toxic chemical releases on a new project and to close down older portions of the facility.

72. In Minnesota, citizens used TRI information to convince a company to reduce its 130,000 pounds of toluene emissions by 98 percent.

73. In Ohio, it was reported that citizens groups used TRI information to obtain a commitment from B.F. Goodrich that it would reduce its toxic air emissions by 70 percent.

74. Scientists use TRI data. In February 2000, for example, the journal *Drug and Chemical Toxicology* published an article showing how public health professionals are able to use TRI or other similar data as part of analysis to identify and define populations potentially exposed to risk from toxic chemicals.

75. Labor unions use TRI data. The United Auto Workers Union has accessed and analyzed TRI and other environmental data to assess industrial emergency response capabilities at various plants.

76. Investment funds use TRI data to evaluate the environmental performance of companies so that they can target their investments to support companies that have strong environmental records.

77. The federal government also uses TRI data. The National Institutes of Health, for example, used TRI data to establish a website that provided information for assessing the environmental hazards caused by Hurricane Katrina.

78. EPA's Office of Health Research published a study of national and regional differences in county-level TRI chemical releases according to ethnicity or race and income.

79. EPA's Office of Enforcement and Compliance Assurance has used TRI data as part of its Online Tracking Information System, a collection of online search engines used for enforcement targeting, facility review prior to inspections, and general enforcement and compliance program planning.

80. The Department of Housing and Urban Development has used TRI data to establish a nationwide "Map Your Community" database that allows individuals to enter their home addresses and generate a map showing the location of nearby TRI reporting facilities. *See*, *e.g.*, HUD Locator Services *at* http://egis.hud.gov/egis/.

81. Even the Internal Revenue Service has used TRI data to enforce a tax on releases of chlorofluorocarbons, a potent contributor to the destruction of the ozone layer.

**General Statutory Authority for TRI Reporting**

82. The statutory authority for the TRI program is found in section 313 of EPCRA, 42 U.S.C. § 11023, and section 6607 of PPA, 42 U.S.C. § 13106.

83. Under EPCRA section 313, a facility that has ten or more full-time employees and falls within one of a number of specific industrial classification codes must submit an annual report form to EPA and the government of its home state if the facility manufactures, processes or otherwise uses certain chemicals in excess of certain reporting thresholds. 42 U.S.C. §§ 11023(a) & (b)(1)(A).

84. As for the chemicals, section 313 designates a set of chemicals or chemical groups as subject to TRI reporting requirements ("TRI chemicals"), and also gives the EPA Administrator power to add or delete chemicals from that list. 42 U.S.C. §§ 11023(c) & (d). There were originally more than 300 TRI chemicals, and currently, there are more than 600.

85.  Those TRI chemicals include substances known to cause brain, blood, respiratory and developmental problems, including cancer.

86.  As for the reporting thresholds, in EPCRA section 313(f)(1), Congress established TRI thresholds that vary based on whether the facility manufactures the TRI chemical, processes it, or uses the chemical in some other way.  Specifically, under the statute, a facility must report regarding a TRI chemical if in the previous year it:

> a.   manufactured or processed more than 25,000 pounds of the chemical; or

> b.   otherwise used more than 10,000 pounds of the chemical.

42 U.S.C. §§ 11023(f)(1)(A) & (f)(1)(B)(iii).

87.  EPA promulgated regulations incorporating these statutory reporting thresholds in 1988.  *Toxic Chemical Release Reporting; Community Right-to-know*, 53 Fed. Reg. 4500 (Feb. 16, 1988) (promulgating 40 C.F.R. part 372).

88.  A facility that is subject to TRI reporting requirements must, for each TRI chemical manufactured, processed or used at the facility, complete a toxic chemical release form.  42 U.S.C. § 11023(a).

89.  Pursuant to EPCRA section 313(g)(1), the toxic release form must provide for the submission of, among other things, the following information:

> a.   whether the TRI chemical is manufactured, processed or otherwise used at the facility;

> b.   an estimate of the maximum amounts (in ranges) of the TRI chemical present at the facility at any time during the preceding calendar year; and

> c.   the annual quantity of releases of the TRI chemical from the facility, that is, the amount of the chemical entering each environmental medium – land, air and water.

42 U.S.C. § 11023(g)(1)(C).

90.  PPA section 6607(b) requires that each owner or operator of a facility required to file a TRI report under EPCRA section 313 must also include in that TRI report the following information:

a.  the quantity of the TRI chemical entering any waste stream prior to recycling, treatment or disposal;

b.  the amount of the TRI chemical that is recycled, and the process used; and

c.  a ratio of production of the TRI chemical in the reporting year to the production in the previous year.

42 U.S.C. §§ 13106(a), (b) & (c).

91.  The data elements required by EPCRA section 313(g)(1), 42 U.S.C. § 11023(g)(1), and the data elements required by PPA section 6607(b), 42 U.S.C. § 13106(b), define reporting for the TRI program.  An information disclosure by a facility subject to TRI reporting requirements that does not include those elements does not constitute reporting under TRI.

**Form R**

92.  Pursuant to EPCRA section 313(g), 42 U.S.C. § 11023(g), EPA has created Toxic Chemical Release Inventory Reporting Form R ("Form R"), which facilities use to report the information required under EPCRA section 313 and PPA section 6607.

93.  More specifically, facilities are required to report the following annual quantities for each TRI chemical in sections 8.1-8.8 of Form R:

| Section 8.1 | Quantity of releases, including the following subquantities: |
|---|---|

| · Section 8.1a | Total on-site disposal to landfills and injection wells |
| · Section 8.1b | Total other on-site disposal or other releases |
| · Section 8.1c | Total off-site disposal to landfills and injection wells |
| · Section 8.1d | Total other off-site disposal or other releases |

| Section 8.2 | Quantity used for energy recovery on site |
|---|---|
| Section 8.3 | Quantity used for energy recovery off site |
| Section 8.4 | Quantity recycled on site |
| Section 8.5 | Quantity recycled off site |
| Section 8.6 | Quantity treated on site |
| Section 8.7 | Quantity treated off site |
| Section 8.8 | Quantity released to the environment as a result of remedial actions, catastrophic events or one-time events not associated with production processes |

94.  The sum of the amounts reported in sections 8.1 through 8.7 is referred to as "total production related waste," as it reflects the total amount of waste forms of the chemical generated in the course of ordinary production activities at the facility.

95.  The sum of the amounts reported in section 8.1 plus the amount of releases to the environment reported in section 8.8 is referred to as "releases," as it reflects the amount of waste forms of the chemical released to the environment.

**The 1994 Regulations and Form A Certifications**

96.  EPCRA section 313(f)(2), 42 U.S.C. § 11023(f)(2), gives the Administrator authority, subject to certain conditions, to establish reporting thresholds different from those that Congress set in section 313(f)(1).

97.  In November 1994, EPA promulgated regulations  (the "1994 Regulations") that established an alternate set of TRI reporting thresholds (the "alternate reporting thresholds"). *Alternate Threshold for Facilities With Low Annual Reportable Amounts; Toxic Chemical Release Reporting; Community Right-To-Know*, 59 Fed. Reg. 61488 (Nov. 30, 1994).

98.  Specifically, the 1994 Regulations provided that a facility that was otherwise subject to reporting requirements for a TRI chemical did not need to file Form R if during the reporting year it:

  a.  manufactured, processed or otherwise used 1 million pounds or less of the chemical; and

  b.  had an annual reportable amount ("ARA") of 500 pounds or less of the chemical.

*Id.* at 61489, 61502.

99.  The ARA, as defined in the 1994 Regulations, was equal to the total production related waste, as defined in paragraph 94 above.  *Id.* at 61489-90.

100.  A facility that met the alternate reporting thresholds for a TRI chemical could still file Form R if it so chose.  However, if that facility did not want to file Form R for that chemical, the regulations required it to certify that it met the alternate reporting thresholds.  *Id.* at 61489.

101.  To implement this certification option, EPA created a certification form known as Form A.  Form A required the facility to certify that it manufactured, processed or otherwise used 1 million pounds or less of the chemical and had an ARA of 500 pounds or less.

102.  Form A does not, however, require the facility to report certain data elements reported on Form R and required by EPCRA section 313(g)(1), 42 U.S.C. § 11023(g)(1), and PPA section 6607(b), 42 U.S.C. § 13106(b), specifically:

a.   whether the TRI chemical is manufactured, processed or otherwise used at the facility;

b.   an estimate of the maximum amounts (in ranges) of the TRI chemical present at the facility at any time during the preceding calendar year;

c.   the annual quantity of the TRI chemical entering each environmental medium – land, air and water;

d.   the quantity of the TRI chemical entering any waste stream prior to recycling, treatment or disposal;

e.   the amount of the TRI chemical that is recycled, and the process used; and

f.   the ratio of production of the TRI chemical in the reporting year to the production in the previous year.

103.  Because Form A does not include these elements, it does not constitute reporting under EPCRA and PPA.  *See* paragraphs 89-91 above.

**The 1999 PBT Regulations and the 2001 Lead Regulations**

104.  In 1999, EPA promulgated regulations that revised TRI reporting thresholds for PBT chemicals (the "1999 PBT Regulations").  *Persistent Bioaccumulative Toxic (PBT) Chemicals; Final Rule*, 64 Fed. Reg. 58666 (Oct. 29, 1999).

105.  The 1999 PBT Regulations changed TRI reporting requirements in two ways.  First, the 1994 PBT Regulations provided that facilities could not file Form A for PBT chemicals. *Id.* at 58670/2, 58672/2.

106.  Second, the 1999 PBT Regulations established more stringent reporting thresholds for PBT chemicals than those set in the statute.

107.  For this purpose, EPA divided PBT chemicals into three groups:  (a) PBT chemicals that were highly persistent and highly bioaccumulative (the "highly PBT chemicals"); (b)

dioxins and dioxin-like compounds[2]; and (c) the remaining PBT chemicals (the "remaining PBT chemicals").

108.  For the highly PBT chemicals, the 1999 PBT Regulations required that a facility file a Form R if in the previous year it manufactured, processed or otherwise used more than 10 pounds of the chemical.  *Id.* at 58672/1.

109.  For the remaining PBT chemicals, the 1999 PBT Regulations required that a facility file a Form R if in the previous year it manufactured, processed or otherwise used more than 100 pounds of the chemical.  *Id.*

110.  Although lead and lead compounds (collectively, "lead") are PBT chemicals, they were not subject to the 1999 PBT Regulations.

111.  In 2001, EPA promulgated new regulations (the "2001 Lead Regulations") that revised TRI reporting thresholds for lead.  *Lead and Lead Compounds; Lowering of Reporting Thresholds; Community Right-to-Know Toxic Chemical Release Reporting; Final Rule*, 66 Fed. Reg. 4500 (Jan. 17, 2001).

112.  The 2001 Lead Regulations established the same reporting thresholds for lead as for the remaining PBT chemicals.  Thus, the 2001 Lead Regulations provided that facilities could not use Form A for lead and required that a facility file a Form R report if in the previous year it manufactured, processed or otherwise used more than 100 pounds of lead.  *Id.* at 4505/1.

113.  Thus, to summarize, the following TRI reporting thresholds were in effect as of the end of 2001 (the "preexisting reporting thresholds"):

---

[2]  The 2006 Regulations do not change reporting requirements for dioxins and dioxin-like compounds, and thus the Plaintiff States do not discuss those compounds further in this complaint.

| Type of Chemical | Reporting Requirement | Alternate Reporting Requirement |
|---|---|---|
| Non-dioxin PBT chemicals | *For highly PBT chemicals*:<br><br>A facility must file Form R if it manufactures, processes or uses *more* than 10 lbs. of the chemical.<br><br>*For remaining PBT chemicals, including lead*:<br><br>A facility must file Form R if it manufactures, processes or uses *more* than 100 lbs. of the chemical. | None. |
| Non-PBT chemicals | A facility must file Form R if it manufactures or processes *more* than 25,000 lbs. of the chemical, or otherwise uses *more* than 10,000 lbs. of the chemical. | Instead of filing Form R, a facility may file Form A if it (a) manufactures, processes or uses 1,000,000 lbs. *or less* of the chemical, and (b) has an ARA of 500 lbs. *or less* for the chemical. |

**The 2006 Regulations at Issue in This Litigation**

114.  In October 2005, EPA published proposed revisions to the existing TRI reporting requirements for public comment (the "Proposed Rule").  *Toxics Release Inventory Burden Reduction Proposed Rule*, 70 Fed. Reg. 57822/2 (Oct. 4, 2005).

115.  The Proposed Rule sets forth a revised set of alternate reporting thresholds for non-PBT chemicals, and a new set of alternate reporting thresholds for the highly PBT chemicals and the remaining PBT chemicals, including lead (collectively, the "covered PBT chemicals").

116.  For  non-PBT chemicals, EPA proposed to relax the alternate reporting requirements by increasing the ARA threshold from 500 pounds to 5,000 pounds.  Thus, if a facility manufactured, processed or used 1,000,000 pounds or less of the chemical, and had a ARA of 5,000 pounds or less, it could use Form A.  *Id.* at 57842/1.

117.  For  the covered PBT chemicals, EPA proposed to allow replacement of full reporting under Form R with certification under Form A.  Form A could be used if three conditions were met:  the facility (a) manufactured, processed or used 1,000,000 pounds or less of the chemical; (b) had an "PBT reportable amount" ("PRA") of 500 pounds or less for the chemical; and (c) had zero releases of the chemical.  *Id.* at 57383/3.

118.  EPA defined the PRA as the sum of the amounts reported in sections 8.2 through 8.8 of Form R, *see* paragraph 93 above, reflecting the amount of waste management quantities, other than production-related releases, from the facility.  *Id.*

119.  The Proposed Rule also proposed the revision of the Form A certification requirements to be consistent with the proposed new alternative reporting thresholds.  *Id.* at 57847/3.

120.  In support of the Proposed Rule, EPA prepared an economic analysis.  *See* U.S. Environmental Protection Agency, Office of Environmental Information, *Economic Analysis of the Proposed Toxics Release Inventory Phase II Burden Reduction Rule*, docket no. EPA-HQ-TRI-2005-0073-0002 through -0010 (Sept. 19, 2005) (hereinafter, "*Economic Analysis (Proposed Rule)*").

121.  EPA received well over 100,000 written comments on the proposed changes, the vast majority of which opposed weakening of TRI reporting requirements.

122.  EPA prepared written responses to some of those comments.  *See generally Response to Comments.*

123.  On December 22, 2006, EPA promulgated the Final Rule.  *See Toxics Release Inventory Burden Reduction Final Rule*, 71 Fed. Reg. 76932 (Dec. 22, 2006).

124.  With regard to covered PBT chemicals, the final regulations set forth the same alternate reporting thresholds as the Proposed Rule, as set forth in paragraph 117 above.  40 C.F.R. § 372.27(a)(2); *see also* 71 Fed. Reg. at 76937/2.

125.  With regard to non-PBT chemicals, the final regulations were not the same as the proposed regulations, as they added a new 2,000-pound threshold criterion for releases.

126.  Thus, the final regulations provided that a facility could use Form A for non-PBT chemicals if three conditions were met:  the facility (a) manufactured, processed or used 1,000,000 pounds or less of the chemical; (b) had an ARA of 5,000 pounds or less for the chemical; and (c) had 2,000 pounds or less in releases of the chemical.  40 C.F.R. § 372.27(a)(1); *see also* 71 Fed. Reg. at 76937/3.

127.  The final regulations also redefined the ARA (the "expanded ARA").  Under the new definition, the expanded ARA was equal to the previous ARA, as defined in paragraph 99 above, plus the amount of any releases reported in section 8.8.  40 C.F.R. § 372.27(a)(1)(ii); *see also* 71 Fed. Reg. at 76937/3-76938/1.

128.  The proposed regulations did not propose any threshold limit regarding the amount of releases for non-PBT chemicals, and in fact did not even mention the idea of such a threshold for non-PBT chemicals.  *See*, *e.g.*, 71 Fed. Reg. at 76937/3.

129.  As in the Proposed Rule, the Final Rule revised the Form A certification requirements to be consistent with the new alternative reporting thresholds.  40 C.F.R. § 372.95(b)(4)(i) & (ii); *see also* 71 Fed. Reg. at 76945/2-3.

130.  In support of the Final Rule, EPA prepared a revised economic analysis.  *See generally Economic Analysis (Final Rule)*.

131.  The 2006 Regulations became effective on January 22, 2007.  71 Fed. Reg. at 76932/2.

132. Thus, to summarize, the following TRI reporting thresholds are now in effect; the provisions added or revised in the 2006 Regulations are indicated in boldface type:

| Type of Chemical | Reporting Requirement | Alternate Reporting Requirement |
|---|---|---|
| Non-dioxin PBT chemicals | *For highly PBT chemicals*:<br><br>A facility must file Form R if it manufactures, processes or uses *more* than 10 lbs. of the chemical.<br><br>*For remaining PBT chemicals, including lead*:<br><br>A facility must file Form R if it manufactures, processes or uses *more* than 100 lbs. of the chemical. | **[added] Instead of filing Form R, a facility may file Form A if it (a) manufactures, processes or uses 1,000,000 lbs. *or less* of the chemical, (b) has an PRA of 500 lbs. *or less* for the chemical, and (c) has no releases of the chemical.** |
| Non-PBT chemicals | A facility must file Form R if it manufactures or processes *more* than 25,000 lbs. of the chemical, or otherwise uses *more* than 10,000 lbs. of the chemical. | **[revised] Instead of filing Form R, a facility may file Form A if it (a) manufactures, processes or uses 1,000,000 lbs. *or less* of the chemical, (b) has an expanded ARA of 5,000 lbs. *or less* for the chemical, and (c) has releases of 2,000 lbs. *or less* of the chemical.** |

133. The first TRI reports subject to the 2006 revised reporting requirements were due on or before July 1, 2007, for reporting year (*i.e.*, calendar year) 2006. *Id.* at 76932/2.

**<u>The Plaintiff States' Standing</u>**

134. The effect of the Final Rule will be to reduce the amount of data available in the TRI database regarding releases, other waste management practices and quantities stored on site of TRI chemicals.

135. By statute, a facility files its TRI reports with both EPA and the government of the state in which it is located. 42 U.S.C. § 11023(a).

136.  As noted in paragraphs 58-61, 63-65 and 67 above, the Plaintiff States use TRI data in a variety of ways.

137.  As noted in paragraphs 62 and 66 above, the citizens of the Plaintiff States use TRI data in a variety of ways.

138.  If this Court does not invalidate the 2006 Regulations, the Plaintiff States and the citizens upon whose behalf the Plaintiff States file this suit as *parens patriae* will experience irreparable and imminent harm, as their ability to use TRI data for those purposes will be permanently impaired because there will be significantly less information in the TRI database regarding releases and other waste streams available for them to use.

139.  This concrete, actual, imminent harm to the Plaintiff States and their affected citizens is directly traceable to EPA's promulgation of the regulations.  EPA itself assumes that at least some facilities will take advantage of new opportunities provided by the 2006 Regulations to file Form A rather than Form R, and as a result those facilities will provide less TRI information for the Plaintiff States and their affected citizens to use.

140.  A decision of this Court invalidating the 2006 Regulations would redress this concrete, imminent harm to the Plaintiff States and their affected citizens by reinstating the prior, more comprehensive reporting requirements.

## FIRST CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A) & (C)*
*Violations of EPCRA section 313(f)(2) and PPA sections 6607(a)-(c) -*
*EPA's failure to apply the substantial majority standard*
*on a chemical-by-chemical basis*

141.  The Plaintiff States reallege and incorporate by reference paragraphs 1 through 140 in this claim for relief.

142.  EPCRA section 313(f)(2), 42 U.S.C. § 11023(f)(2), authorizes EPA to revise TRI reporting thresholds based on an analysis of the impact of the revised thresholds on reporting for individual chemicals, not the aggregate of all chemicals.

143.  Specifically, section 313(f)(2) states that EPA may revise the threshold for a TRI chemical so long as the revised threshold "shall obtain reporting on a substantial majority of total releases *of the chemical*" at all facilities subject to the requirements of section 313.  42 U.S.C. § 11023(f)(2) (emphasis added).

144.  Thus, while EPA may establish a revised reporting threshold that applies to more than one TRI chemical, the "substantial majority" test must be met for *each* chemical subject to that revised threshold.

145.  PPA sections 6607(a)-(c) provide that facilities required to file information under EPCRA section 313 must also file additional information regarding waste management practices, so that reporting thresholds for EPCRA apply also to PPA reporting requirements.  42 U.S.C. § 13106(a)-(c).

146.  In promulgating the non-PBT part of the 2006 Regulations, EPA did not meet the EPCRA section 313(f)(2) chemical-by-chemical test.

147.  EPA's own analysis shows that the Final Rule, if it had been in effect for reporting year 2004, could have resulted in the replacement of full Form R reporting with Form A certifications for 100 percent of the releases for each of at least 26 non-PBT chemicals.

148.  Because Form A certifications do not report the amount of releases of the chemical, the potential replacement of *all* Form R reporting with Form A certifications for a TRI chemical does not preserve reporting on a "substantial majority" of releases for that chemical.

149.  Indeed, if all reporting for a chemical was on Form A, as would have been the case, according to EPA's analyses, for dozens of TRI chemicals in both 2002 and 2004 had the 2006

Rule been in effect, there would be no way to determine whether or not there were any releases of that chemical in the United States, because under the 2006 Regulations, Form A does not distinguish between zero releases and releases of up to one ton.

150. In addition, EPA's own analysis shows that the Final Rule, if it had been in effect for reporting year 2004, could have resulted in the replacement of full Form R reporting with Form A certifications for between 50 and 100 percent of the releases for at least 20 additional non-PBT chemicals.

151. Thus, EPA's own analysis shows that for at least 46 non-PBT chemicals, the new alternative reporting thresholds might not have preserved reporting on a majority of releases, let alone a "substantial" majority.

152. As a result, the parts of the 2006 Regulations establishing alternate reporting thresholds for non-PBT chemicals do not meet the statutory requirement that EPA "shall obtain reporting on a substantial majority of total releases" of each TRI chemical.

153. The 2006 Regulations are therefore not in accordance with EPCRA section 313(f)(2), 42 U.S.C. § 11023(f)(2), or PPA sections 6607(a)-(c), 42 U.S.C. §§ 13106(a)-(c), and are in excess of those statutory authorities and limitations.

154. Thus, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration in this actual controversy that the provisions of the Final Rule regarding non-PBT chemicals are not in accordance with law and are in excess of statutory authority and limitations.

155. In addition, APA sections 706(2)(A) and (C), 5 U.S.C. §§ 706(2)(A) & (C), give this Court the power to hold unlawful and set aside the provisions of the Final Rule regarding non-PBT chemicals, and in particular 40 C.F.R. §§ 372.27(a)(1) and 372.95(b)(4)(i).

156.  EPA's violations of law have injured and continue to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new, less stringent alternative reporting thresholds for non-PBT chemicals and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

157.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of EPA's unlawful action.

## SECOND CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's failure to demonstrate that the reporting thresholds for non-PBT chemicals*
*in the final rule satisfy the "substantial majority" standard*

158.  The Plaintiff States reallege and incorporate by reference paragraphs 1 through 157 in this claim for relief.

159.  Agency rulemaking is arbitrary and capricious if the agency has offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, or if the agency has failed to respond in a reasoned manner to significant comments received.

160.  A group of commenters noted that provisions of the Proposed Rule applicable to non-PBT chemicals violated EPCRA section 313(f)(2) because those provisions did not ensure

reporting on "a substantial majority of releases" on a chemical-by-chemical basis for each chemical subject to those provisions. *Response to Comments* at 105.

161.  In response, EPA stated that it had added a 2,000-pound threshold for releases in the Final Rule, in addition to the 5,000-pound ARA threshold and the 1,000,000-pound use threshold in the Proposed Rule. *Response to Comments* at 106.

162.  EPA did not explain, or even state, however, whether the addition of the 2,000-pound threshold was sufficient to ensure reporting of a substantial majority of releases on a chemical-by-chemical basis for each chemical subject to those provisions. *Response to Comments* at 106.

163.  EPA also stated that, under the Final Rule, Form A certifications would "serve as a range report, informing the public that total releases [are] in the range of zero to 2,000 pounds and that total waste management . . . is in the range of zero to 5,000 pounds." *Response to Comments* at 106; *see also id.* at 59.

164.  EPA's explanation that Form A certification, by serving as a "range report," meets the substantial majority test relies on the untenable premise that Form A certification provides "reporting" on releases.   Form A does not meet the requirements for reporting specified in EPCRA section 313(g)(1), 42 U.S.C. § 11023(g)(1), and PPA section 6607(b), 42 U.S.C. § 13106(b). *See* paragraphs 89-91 above.

165.  The zero-to-2,000-pound "range reporting" provided by Form A under the 2006 Regulations does not distinguish between facilities that have no releases and facilities that do have releases, including facilities with significant releases of up to a ton of the TRI chemical at issue.

166.  Thus, a citizen reading the Form A "range report" would not even know the most basic information about the facility's releases:  whether or not there were any releases.

167.   For example, toluene-2,6-diisocyanate ("2,6-TDI") is a non-PBT chemical.  It is a volatile substance that is reasonably anticipated to be a carcinogen, can irritate and burn the skin and eyes on contact, and can irritate the nose, throat and lungs if inhaled, potentially causing pulmonary edema.  It was reported that after a December 2004 toluene diisocyanate spill at the Reiss Industries plant in Watertown, Wisconsin, four employees were taken to the hospital and people from 21 houses nearby had to wait for their homes to be cleared before they could return.  *See* "Four Injured in Watertown Chemical Spill," *Wisconsin State Journal*, Dec. 16, 2004, *available at* http://www.madison.com/archives/read.php?ref=/wsj/2004/12/16/0412150789.php.

168.   In 2003, the Cytec facility in Olean, New York released almost a half ton (967 pounds) of 2,6-TDI to the air within 1.5 miles of four elementary schools, and reported a maximum amount of over five tons on site.

169.   If the Cytec facility qualifies for Form A under the new rules, the citizens of Olean may not be able to determine from the TRI database in the future whether the facility continues to release that same amount of this chemical near the community's schools, has doubled those releases to just under 2,000 pounds, or has completely eliminated those releases.

170.   Nor might those citizens be able to tell from the TRI database how much 2,6-TDI was stored on site near those schools in 2007, because the maximum amount stored on site is not reported on Form A.

171.   More generally, had the Final Rule been in effect in 2004, EPA determined that there would have been at least twenty-six chemicals for which all facilities would have been able to submit Form A certifications rather than provide reporting on Form R.  *Economic Analysis (Final Rule)* at A-17.

172.   Thus, by EPA's own analysis, had the Final Rule been in effect in 2004, and had all 2004 filings for those twenty-six chemicals occurred on Form A, the TRI database would have

provided no information as to whether there were any releases anywhere in the nation for those chemicals.

173.  EPA estimates that the Final Rule would allow facilities to convert approximately 9,500 Form Rs for non-PBT chemicals to Form A certification.  *Economic Analysis (Final Rule)* at 5-3.

174.  If that were to occur, the aggregate information available from those 9,500 Form A certifications would be that the total amount of releases nationwide was somewhere between zero pounds and 19 million pounds.

175.  Such lack of information is not "reporting."

176.  Indeed, although in some parts of the administrative record EPA contends that Form A certification represents continued reporting, in other parts EPA admits that Form A certification is a loss in reporting.

177.  For example, the economic analysis of the Final Rule calculated the percentages of releases that "would no longer be reported to TRI."  *Economic Analysis (Final Rule)* at 5-3.

178.  That analysis also provided a calculation of the pounds of total releases and total production related waste that "would no longer be reported."  *Id.*

179.  For these reasons, any EPA assertion that Form A "range reporting" constitutes a means of satisfying the substantial majority test for non-PBT chemicals is so implausible that it cannot be ascribed to a difference in view or the product of agency expertise.  That issue, along with EPA's failure to respond in a reasoned manner to comments raising it, render the 2006 rulemaking arbitrary and capricious.

180.  In addition, EPA's failure otherwise to explain how the Final Rule satisfied the substantial majority test, and its failure to respond in a reasoned manner to comments raising that issue, render the 2006 rulemaking arbitrary and capricious.

181. Because this aspect of the 2006 rulemaking is arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

182. In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the provisions of the Final Rule regarding non-PBT chemicals, and in particular 40 C.F.R. §§ 372.27(a)(1) and 372.95(b)(4)(i).

183. EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens. Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

184. APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law. The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements. The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

### THIRD CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A) & (C)*
*Violations of EPCRA section 313(f)(2) and PPA sections 6607(a)-(c) -*
*EPA's failure to apply the substantial majority standard based on reporting from all*
*facilities subject to section 313*

185. The Plaintiff States reallege and incorporate by reference paragraphs 1 through 184 in this claim for relief.

186. EPCRA section 313(f)(2), 42 U.S.C. § 11023(f)(2), authorizes EPA to revise TRI reporting thresholds based on reporting from *all* facilities subject to that statutory provision.

187.  Specifically, section 313(f)(2) states that EPA may revise the threshold for a TRI chemical so long as the revised threshold "shall obtain reporting on a substantial majority of total releases of the chemical *at all facilities subject to the requirements of [section 313]*."  42 U.S.C. § 11023(f)(2) (emphasis added).

188.  PPA sections 6607(a)-(c) provide that facilities required to file information under EPCRA section 313 must also file additional information regarding waste management practices, so that reporting thresholds for EPCRA apply also to PPA reporting requirements.  42 U.S.C. § 13106(a)-(c).

189.  On information and belief, in promulgating the non-PBT provisions of the 2006 Regulations, EPA did not apply the substantial majority test consistent with this "all facilities" standard, as EPA excluded from the calculations upon which it relied many releases from facilities subject to section 313.

190.  Pursuant to the 1994 Regulations, facilities can file, and routinely do file, Form A certifications rather than a full Form R report if they satisfy the requirements for filing Form A.

191.  Because Form A does not require facilities to report the quantity of their releases, facilities' use of this preexisting entitlement to file Form A under the 1994 Regulations has already been creating reporting losses for releases for over a decade since those regulations were promulgated.  These reporting losses under the 1994 Regulations continue to date, and would continue even if the 2006 Regulations had not been promulgated.  Thus, the reporting losses under the 1994 Regulations (the "independent reporting losses") are independent of the additional reporting losses that will be generated by the new 2006 Regulations.

192.  EPA concedes that facilities generating these independent reporting losses remain subject to the requirements of section 313, as EPA relies on section 313 as authority in requiring those facilities to submit Form A.

193.  Nonetheless, on information and belief, in promulgating the 2006 Regulations, EPA relied on calculations of the amount of reporting losses resulting from the 2006 Regulations that did not take into account such independent reporting losses.

194.  Thus, in excluding from its calculations these independent reporting losses from facilities subject to the requirements of section 313, EPA did not rely on an analysis of "releases . . . at all facilities subject to section 313," as required by section 313(f)(2).

195.  The effect of EPA's failure to rely on calculations applying the "all facilities" standard is potentially to underestimate the amount of reporting losses, and thus potentially to misjudge the extent to which the section 313(f)(2) substantial majority test is satisfied.

196.  As noted in paragraph 167 above, 2,6-TDI is reasonably anticipated to be a carcinogen, can irritate and burn the eyes and skin on contact, and can irritate the nose, throat and lungs if inhaled.

197.  In an analysis for releases of 2,6-TDI that EPA relied on in support of the Final Rule, EPA calculated a reporting loss of 600 pounds, or 47.35 percent, implying a minimum reporting of 52.65 percent of releases for that chemical.  *Economic Analysis (Final Rule)* at A-15.

198.  On information and belief, those EPA calculations for 2,6-TDI, like EPA's other calculations of reporting losses for the Final Rule in the administrative record, did not take into account the independent reporting losses for that chemical.

199.  On information and belief, a reasonable analysis for releases of 2,6-TDI that did take into account the independent reporting losses, but otherwise used the same assumptions that EPA had used, would estimate a much greater reporting loss and would imply a minimum reporting of less than fifty percent of releases for that chemical, which is not even a majority of releases, let alone a "substantial" majority.

200.  Therefore, on information and belief, in promulgating the Final Rule, EPA did not ensure that the alternate reporting thresholds for non-PBT chemicals obtained reporting on releases from "all facilities subject to the requirements of [section 313]," and the promulgation is therefore not in accordance with EPCRA section 313(f)(2), 42 U.S.C. § 11023(f)(2), or PPA section 6607(a)-(c), 42 U.S.C. §§ 13106(a)-(c), and is in excess of that statutory authority and limitations.

201.  Thus, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration in this actual controversy that the provisions of the Final Rule regarding non-PBT chemicals are not in accordance with law and are in excess of statutory authority and limitations.

202.  In addition, APA sections 706(2)(A) and (C), 5 U.S.C. §§ 706(2)(A) & (C), give this Court the power to hold unlawful and set aside the provisions of the Final Rule regarding non-PBT chemicals, and in particular 40 C.F.R. §§ 372.27(a)(1) and 372.95(b)(4)(i).

203.  EPA's violations of law have injured and continue to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new, less stringent alternative reporting thresholds for non-PBT chemicals and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

204.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of EPA's unlawful action.

## FOURTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's failure to respond in a reasoned manner to comments regarding the need to take*
*independent reporting losses into account in applying section 313(f)(2)*

205.  The Plaintiff States reallege and incorporate by reference paragraphs 1 through 204 in this claim for relief.

206.  Agency rulemaking is arbitrary and capricious if the agency has failed cogently to explain why it has exercised its discretion in a given manner, the agency has failed to respond in a reasoned manner to significant comments received, or if there are no findings or analysis to justify the choice the agency made nor any indication of the basis on which the agency exercised its discretion.

207.  A group of commenters asked whether or not EPA, in calculating reporting losses under the new alternative reporting requirements, had taken into account the independent reporting losses discussed in paragraphs 190-199 above.  *Response to Comments* at 106.

208.  The commenters raised this point because failure to take the independent reporting losses into account would be contrary to section 313(f)(2) and arbitrary and capricious.

209.  Specifically, interpreting the statute to exclude the independent reporting losses could allow EPA to evade the substantial majority test by repeatedly increasing reporting thresholds in such a way that ultimately much less than a "substantial majority" of releases, however that term is defined, would be reported.

210.  For example, EPA might first raise the ARA threshold from 500 to 5,000 pounds, claiming that the 5,000-pound threshold would continue to gather reporting on a "substantial majority" of releases because EPA, in its calculation of reporting losses, did not take into consideration independent reporting losses under the 500-pound threshold.  EPA might

subsequently raise the ARA threshold from 5,000 to 20,000 pounds, claiming that the 20,000-pound threshold would continue to gather reporting on a "substantial majority" of releases because EPA, in its calculation of reporting losses, did not take into consideration independent reporting losses under the 5,000-pound threshold. EPA might then revise the ARA threshold from 20,000 pounds to 50,000 pounds, claiming that the 50,000-pound threshold would continue to gather reporting on a "substantial majority" of releases because EPA, in its calculation of reporting losses, did not take into consideration independent reporting losses under the 20,000-pound threshold.

211. Thus, interpreting the statute to exclude the independent reporting losses allows EPA to rely on an ever-shrinking reporting base when calculating whether a proposed regulation continues to obtain a "substantial majority" of reporting on releases.

212. After such repeated whittling away at reporting requirements, it could be the case that less than a substantial majority of releases from facilities subject to section 313 – perhaps even a minority of such releases – would be reported for one or more TRI chemicals.

213. Such an interpretation of the statute would be contrary to the letter and spirit of the statute, and therefore such an interpretation, along with any calculations relying on such an interpretation, would be arbitrary and capricious.

214. In its response to the commenters on this point, EPA stated that it considered the independent reporting losses by identifying in the administrative record an analysis of the Proposed Rule that took into account such losses, found at docket number EPA-HQ-TRI-2005-0073-0020 (the "0020 Analysis"). *Response to Comments* at 107.

215. Notwithstanding the presence of the 0020 Analysis in the administrative record, however, on information and belief EPA did not rely on reporting loss figures from the 0020 Analysis in justifying the Proposed Rule.

37

216.  Instead, on information and belief, EPA relied on reporting loss figures from a separate analysis contained in Table A-1 to the *Economic Analysis (Proposed Rule)*, found at docket number EPA-HQ-TRI-2005-0073-0009 (the "0009 Analysis"), in justifying the Proposed Rule.

217.  The 0020 and 0009 Analyses provide different reporting loss calculations.

218.  Specifically, the amounts of reporting losses for a 5,000-pound ARA threshold level differ between the two analysis for numerous chemicals.  For example, for at least 20 of the first 25 chemicals on the 0020 Analysis, the amount of lost reporting for releases on the 0020 Analysis varies from the amount of lost reporting for releases on the 0009 Analysis.

219.  In addition, the 0020 Analysis shows that 42 TRI chemicals might have lost all Form R reporting in 2002 had the proposed regulations applied, while the 0009 Analysis shows that 26 TRI chemicals might have done so.

220.  On information and belief, the difference between the 0020 and 0009 Analyses is that the 0020 Analysis takes into account independent reporting losses arising from the pre-existing 500-pound threshold, while the 0009 Analysis does not.

221.  On information and belief, in the preamble to the Proposed Rule, EPA referenced figures from the 0009 Analysis but did not reference figures from the 0020 Analysis.

222.  For example, the preamble to the Proposed Rule indicated that 26 TRI chemicals might have lost all Form R reporting in 2002 had the proposed regulations applied, 70 Fed. Reg. at 57843/3, which is consistent with the 0009 Analysis but inconsistent with the 0020 Analysis.

223.  With regard to the Final Rule, it is impossible to determine with certainty whether EPA considered independent reporting losses from the pre-existing 500-pound threshold in the analyses it put in the administrative record in support of the final regulations, because EPA failed

clearly to explain in the preamble to the Final Rule or the economic analysis for the Final Rule whether it had done so or not.

224.  On information and belief, however, the analyses in the administrative record that EPA relied on to support the Final Rule did not take into account those independent reporting losses.

225.  For example, EPA stated that certain of its calculations of reporting losses arising from the new reporting thresholds were calculated "[r]elative to" the preexisting reporting threshold.  71 Fed. Reg. at 76942/2.

226.  EPA also expressly stated that the burden and cost reduction analyses underlying Tables 3-1, 3-2 and 3-3 of the economic analysis for the Final Rule "do[ ] not include" the non-PBT Form Rs that were likely eligible for Form A, before enactment of the 2006 Regulations, based in an ARA of less than or equal to 500 pounds.  *Economic Analysis (Final Rule)* at 3-1 to 3-2.

227.  On information and belief, there is in fact no analysis of the Final Rule in the administrative record that takes into account independent reporting losses for the pre-existing 500-pound ARA threshold.

228.  EPA's failure to explain that the analysis upon which, on information and belief, it relied to support the Proposed Rule did not take into account the independent reporting losses, and EPA's failure to explain whether or not the analysis upon which it relied to support the Final Rule took into account the independent reporting losses, render the 2006 rulemaking arbitrary and capricious.

229.  EPA's failure, on information and belief, to take the independent reporting losses into account in the Final Rule, along with EPA's failure to explain why it determined, on

information and belief, that not taking the independent reporting losses into account was consistent with the law, render the 2006 rulemaking arbitrary and capricious.

230.  EPA's failure to respond in a reasoned manner to comments raising the issue of independent reporting losses renders the 2006 rulemaking arbitrary and capricious.

231.  Because this aspect of the 2006 rulemaking is arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

232.  In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the provisions of the Final Rule regarding non-PBT chemicals, and in particular 40 C.F.R. §§ 372.27(a)(1) and 372.95(b)(4)(i).

233.  EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

234.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

## FIFTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's failure to respond in a reasoned manner to comments regarding the extent*
*to which the reduction in reporting under the 2006 Regulations is*
*contrary to the purpose of TRI*

235.  The Plaintiff States reallege and incorporate by reference paragraphs 1 through 234 in this claim for relief.

236.  Agency rulemaking is arbitrary and capricious if the agency has failed cogently to explain why it has exercised its discretion in a given manner, or if the agency has failed to respond in a reasoned manner to significant comments received.

237.  Among TRI's principal purposes is to provide information to local communities about use, waste generation and releases of toxic chemicals.

238.  By statute, Congress provided that the purpose of TRI is to:

provide information to the Federal, *State*, and *local governments and the public, including citizens of communities surrounding covered facilities*.  The release form shall be available . . . to inform persons about releases of toxic chemicals to the environment; to assist governmental agencies, researchers, and other persons in the conduct of research and data gathering; to aid in the development of appropriate regulations, guidelines, and standards; and for other similar purposes.

42 U.S.C. § 11023(h) (emphasis added).

239.  EPA has stated that TRI's "overriding purpose . . . is to provide *government agencies*, researchers, and *local communities*, with a comprehensive picture of toxic chemical releases and potential exposures to humans and ecosystems."  *Lead and Lead Compounds; Lowering of Reporting Thresholds; Community Right-to-Know Toxic Chemical Release Reporting; Final Rule*, 66 Fed. Reg. 4500, 4506/2 (Jan. 17, 2001) (emphasis added).

240.  More specifically, EPA has stated that:

a significant part of [TRI's] overriding goal is to provide information on releases to *local communities* so that they can determine if the releases result in potential

risks.  The entire concept of TRI . . . is founded on the belief that the public has the right to know about chemical use, release, and other waste management *in the areas in which they live . . . .*

*Persistent Bioaccumulative Toxic (PBT) Chemicals; Final Rule*, 64 Fed. Reg. 58666, 58677

(Oct. 29, 1999) (emphasis added).

241.  Commenters, including several states, noted that the proposed reporting thresholds in the Proposed Rule improperly limited information available to state governments, citing specific examples of potential information deficits.  *See, e.g.*, New York Attorney General, *et al.*, Comments on the TRI Burden Reduction Proposed Rule at 16-17, docket no. EPA-HQ-TRI-2005-0073-4553 (Jan. 12, 2006); *see also Response to Comments* at 13, 29, 32, 41-42, 107-08, 112.

242.  New Hampshire, for example, estimated that the Proposed Rule would have allowed 119 of 151 businesses that currently provide full Form R reporting to stop doing so. New York Attorney General, *et al.*, Comments on the TRI Burden Reduction Proposed Rule at 16, docket no. EPA-HQ-TRI-2005-0073-4553 (Jan. 12, 2006).

243.  Commenters, including, for example, the Conference of Mayors, noted that the proposed reporting thresholds in the Proposed Rule improperly limited information available at a local level contrary to the TRI purpose of providing TRI information to local communities, citing specific examples of potential local information deficits.  *See, e.g.*, *Response to Comments* at 13, 21, 27-29, 31-32, 107, 109-110, 112-13.

244.  Commenters noted that communities remain interested in TRI data for a facility even when there are no releases from the facility, because Form R provides information useful for emergency planning purposes, such as the maximum amount of a chemical on site during the year and the amount of chemical waste management quantities generated at the site or transported through a community during the year.  *See, e.g.*, New York Attorney General, *et al.*,

Comments on the TRI Burden Reduction Proposed Rule, docket no. EPA-HQ-TRI-2005-0073-4553, at 13 (Jan. 12, 2006); *see also Response to Comments* at 34, 81.

245.  The inability to tell whether there were any releases from a facility, and the inability to know how much of a chemical is stored on site, each significantly compromise the quality of TRI data and the usefulness of TRI information to the public.

246.  For example, mercury is subject to the new alternate reporting thresholds for covered PBT chemicals in the 2006 Regulations.

247.  Mercury is a dangerous compound that can harm the nervous system (including personality changes, tremors, changes in vision, deafness, muscle incoordination and difficulties with memory), the kidneys, the stomach and the intestines.

248.  Before the 2006 Regulations took effect, a community would have known, for emergency response or other purposes, whether a local facility had used more than 10 pounds of mercury during the previous year, and if so, the maximum amount of mercury (in ranges) on site at that facility during the course of the year, because any facility using more than 10 pounds of mercury would have had to file Form R.  At the same time, the community would see how much mercury was being transported from the facility on local streets.

249.  Under the 2006 Regulations, however, that same facility could use a much larger amount, for example 9,000 pounds – 4 ½ tons – of mercury, and, in an emergency or otherwise, the community might have no access to the range of information provide on Form R, such as the maximum amount of mercury on site at that facility, because even with that large usage amount, the facility might still qualify for Form A certification.

250.  EPA has acknowledged that TRI data users cannot find all of the information provided on Form R elsewhere.  *Response to Comments* at 32.

251.  EPA has also acknowledged that, had the 2006 Regulations applied in 2004, there would have been 557 ZIP codes where all Form Rs (for both non-PBT chemicals and covered PBT chemicals) would have become eligible for Form A, so that it is possible that no reporting would have been done on Form R in those ZIP codes.  *Economic Analysis (Final Rule)* at 5-5 (Table 5-4).

252.  On information and belief, this figure of 557 ZIP codes does not include hundreds of additional ZIP codes where, even under the preexisting reporting thresholds, only Form As, and no Form Rs, were filed.  *See id.*; *see also* 70 Fed. Reg. at 57843/2.

253.  Concerning non-PBT chemicals, for each of those 557 or more ZIP codes, there might have been no way to determine whether or not there were any releases of any such chemicals, since, under the 2006 Regulations, Form A for non-PBT chemicals does not distinguish between zero releases and positive quantities of releases up to 2,000 pounds.

254.  EPA responded to the comments concerning loss of TRI data for non-PBT chemicals by stating that it had added a 2,000-pound threshold for releases of non-PBT chemicals in the Final Rule, and that with this addition the Final Rule:  (a) reduced the estimated reporting loss by 60 percent, by comparison with the Proposed Rule; (b) preserved 80 percent of the burden reduction that would have resulted from the Proposed Rule; and (c) as a result struck a better balance than the Proposed Rule.  *See*, *e.g.*, *Response to Comments* at 14, 22, 30, 43, 114.

255.  Thus, although EPA acknowledged the local information deficits, EPA's response did not address either the extent to which localities might or might not experience such deficits with respect to non-PBT chemicals or the extent to which the Final Rule remedied any such local information deficits.

256.  Concerning covered PBT chemicals, for each of those 557 or more ZIP codes, there might have been no way to determine the specific amount of waste quantities other than releases, or the maximum amount of such chemicals on site, since Form A does not require facilities to report the amount of the chemical used or the maximum amount of chemicals on site.

257.  EPA responded to the comments concerning loss of TRI data for covered PBT chemicals by stating that:

> because the proposed rule as well as the final rule requires zero releases for PBT chemical Form A eligibility, there will be no loss of detailed PBT release information.  For all 2,360 PBT chemical forms expected to qualify for Form A under this rule, communities and other data users will know that the facility had zero releases to the environment of the PBT chemical and between zero and 500 pounds of other waste management.

*Response to Comments* at 33; *see also id.* at 43.  EPA also indicated that for some PBT chemicals, Form A would indicate the form of waste management used, as only one form of waste management is available for certain PBT chemicals.  *Id.* at 43.

258.  Thus, although EPA responded to the comments with arguments regarding *releases* of covered PBT chemicals, it did not respond with arguments regarding the extent to which the Final Rule would (a) create local deficits of TRI information regarding *waste management quantities other than releases* and the *maximum amount stored on site* for PBT chemicals, or (b) otherwise interfere with local communities' ability to evaluate and measure *waste management quantities other than releases* and the *maximum amount stored on site* for PBT chemicals in their area.

259.  EPA also contends that, in the aggregate, any loss of TRI information for covered PBT chemicals would be "minimal" because it estimated that only approximately 2,700 PBT Form Rs would qualify for Form A under the 2006 Regulations, and that of those, approximately 2,100 reported zero waste management quantities other than releases.  *See*, *e.g.*, *Response to*

*Comments* at 79, 80; *compare Response to Comments* at 29 (asserting that approximately 2,360 Form Rs would qualify for Form A).

260.  These contentions, however, do not address the fact that communities may no longer able to verify whether a facility that previously had zero or a few pounds of other waste management quantities of a PBT chemical has increase those other waste management quantities to up to 500 pounds, or whether a facility had increased the maximum amount stored on site from 80 pounds to 8,000 pounds.

261.  Moreover, these EPA contentions do not address the distribution of these effects on local communities across the nation – whether, for example, the effects would be concentrated in particular communities or felt across a wide variety of communities.

262.  EPA's failure to offer a cogent explanation as to why the loss of TRI data for states and local communities was not contrary to TRI's purpose to provide comprehensive information about toxic chemical use and waste practices to states and local communities, and its failure to respond in a reasoned manner to comments raising this issue, renders the 2006 rulemaking arbitrary and capricious.

263.  Because this aspect of the 2006 rulemaking is arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

264.  In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the Final Rule, and in particular 40 C.F.R. §§ 372.27(a)(1) and (2) and §§ 372.95(b)(4)(i) and (ii).

265.  EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that

facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

266.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

## SIXTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's failure to explain how it selected the new reporting threshold amounts*
*for non-PBT chemicals*

267.  The Plaintiff States reallege and incorporate by reference paragraphs 1 through 266 in this claim for relief.

268.  Agency rulemaking is arbitrary and capricious if the agency has failed cogently to explain why it has exercised its discretion in a given manner, if the agency has failed to respond in a reasoned manner to those significant comments received, or if there are no findings or analysis to justify the choice the agency made nor any indication of the basis on which the agency exercised its discretion.

269.  In the Final Rule, as part of the new alternative reporting requirements, EPA retained the 5,000-pound threshold for the ARA from the Proposed Rule, and added a 2,000-pound threshold for releases.

270.  EPA nowhere explains how it decided that these particular amounts – 5,000 pounds and 2,000 pounds – are better thresholds than other amounts.

271.  Commenters asserted that EPA had failed to explain why it decided to establish a 5,000-pound threshold for the ARA rather than set the threshold at some other amount. *Response to Comments* at 140.

272.  In response, EPA did not provide a justification for the 5,000-pound ARA threshold rather than some other threshold amount.  *Response to Comments* at 141-42.

273.  Indeed, although EPA had proposed possible alternate ARA thresholds of 1,000 pounds and 2,000 pounds, EPA did not even explain why it chose the 5,000-pound ARA threshold rather than one of those thresholds.

274.  As for the 2,000-pound release threshold, to the extent any threshold for releases for non-PBT chemicals were lawful and not arbitrary and capricious, such a threshold should have been set at zero, or failing that, EPA should have justified choosing a lower number than the number it did choose.

275.  Setting the threshold at a lower number would have preserved more reporting on releases, other waste management quantities and use of toxic chemicals and therefore would be more consistent with the "overriding purpose" of TRI "to provide government agencies, researchers, and local communities, with a *comprehensive* picture of toxic chemical releases and potential exposures to humans and ecosystems."  66 Fed. Reg. at 4506 (emphasis added).

276.  Setting the threshold at a lower number would have also created greater incentives to reduce releases.  Setting the threshold at a lower number would (a) better preserve the well-documented incentive to reduce releases that TRI reporting obligations create; and (b) potentially create a better incentive to reduce releases well below 2,000 pounds, because the threshold for reducing releases that facilities would need to meet to avoid reporting on Form R would be zero or some number less than 2,000 pounds, rather than 2,000 pounds.

277.  Moreover, setting the threshold for releases at zero pounds would have eliminated the issue of whether the non-PBT provisions of the 2006 Rule were inconsistent with the substantial majority test of EPCRA section 313(f)(2).  *See* First and Third Claims for Relief, above.

278.  EPA's failure to set forth adequately the reasons why it decided on these threshold amounts, its failure to respond in a reasoned manner to comments raising that issue, its failure to provide findings or analysis to justify the choices made, and its failure to set the threshold for releases at zero or some amount less than 2,000 pounds, render the 2006 rulemaking arbitrary and capricious.

279.  Because these aspects of the 2006 rulemaking are arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

280.  In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the provisions of the Final Rule regarding non-PBT chemicals, and in particular 40 C.F.R. §§ 372.27(a)(1) and 372.95(b)(4)(i).

281.  EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

282.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The

Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

## SEVENTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's failure to adequately explain the reasons for its change in position on*
*reporting thresholds for covered PBT chemicals*

283.  The Plaintiff States reallege and incorporate by reference paragraphs 1 through 282 in this claim for relief.

284.  Agency rulemaking is arbitrary and capricious if the agency has changed a rule or policy without explaining why the original reasons for adopting the rule or policy are no longer dispositive, or if the agency has failed to respond in a reasoned manner to significant comments received.

285.  In October 1999, in its preamble to the 1999 PBT Regulations, EPA rejected the idea of allowing a facility to use Form A for PBT chemicals if the facility manufactured, processed or otherwise used 1 million pounds or less of the chemical, and had an ARA of 500 pounds or less of the chemical.  *Persistent Bioaccumulative Toxic (PBT) Chemicals; Final Rule*, 64 Fed. Reg. 58666, 58670/2-3, 58672/2 (Oct. 29, 1999).

286.  EPA rejected use of Form A for PBT chemicals under those conditions because it would reduce data gathering not only for releases but also for other waste management quantities:

> The general information provided in the Form A on the quantities of the chemical that the facility manages as waste is *insufficient for conducting analyses on PBT chemicals* and would be *virtually useless* for communities interested in assessing risk from releases *and other waste management* of PBT chemicals.

*Id.* at 58670/2 (emphasis added); *see also id.* at 58732/3-58733/2.

287.  At that time, EPA concluded that:

50

> PBT chemicals can remain in the environment for a significant amount of time and can bioaccumulate in animal tissues. Even relatively small releases of such chemicals have the potential to accumulate over time and cause significant adverse impacts on human health and the environment. Therefore, EPA believes it is particularly important to gather and disseminate to the public relevant information on even relatively small amounts of releases *and other waste management of PBT chemicals*.

64 Fed. Reg. at 58729/2-3 (emphasis added).

288. In the preamble to the 2001 Lead Regulations, EPA reiterated that:

> [t]he nature of PBT chemicals, including lead . . . , indicates that small quantities of such chemicals are of concern, which provides strong support for setting lower reporting thresholds than the . . . section 313 thresholds of 10,000 and 25,000 pounds.

66 Fed. Reg. at 4504/1.

289. In addition, in the 1999 PBT rulemaking, EPA considered and rejected the idea that facilities could use Form A if they had zero releases of the PBT chemical. 64 Fed. Reg. at 58733/1.

290. EPA rejected this idea because it concluded that it was necessary to ensure continued reporting of information on waste quantities other than releases on Form R, stating that

> [t]his additional waste management information on PBT chemicals is very important to communities because it helps them understand the quantities of EPCRA section 313 chemicals that are being transported through their communities, the destination of these EPCRA section 313 chemicals, as well as the reported waste management activity at the receiving facility.

*Id.* at 58732/3-58733/1 (emphasis added).

291. EPA also rejected the idea of "range reporting" in the 1999 PBT rule because it believed that range reporting was not consistent with "the ultimate intent" of TRI reporting for PBT chemicals, which was "to provide useful information on PBT chemicals to assist

communities in determining if PBT chemicals are present in their communities at levels that may pose an unacceptable risk." *Id.* at 58734/2.

292. Furthermore, when it rejected range reporting in 1999, EPA reasoned that:

> the use of ranges could misrepresent data accuracy because the low or the high end range numbers may not really be that close to the estimated value, even taking into account its inherent error (i.e., error in measurements and developing estimates) . . . . For example, a release of 501 pounds could be misinterpreted as a 999 if reported as a range of 500-999. This represents nearly a 100% error.

*Id.* at 58734/3.

293. In the 2006 Regulations, EPA reversed position and allowed the use of Form A for covered PBT chemicals.

294. Commenters asserted that EPA had not adequately explained this reversal of position. *See*, *e.g.*, *Response to Comments* at 77-78.

295. EPA responded to the comments by providing the following rationale for now allowing the use of Form A:

> allowing Form A for PBT chemicals as conditioned in the [2006 Regulations] will not result in an appreciable reduction in the data reported to the Agency. . . . [EPA] anticipates this rule will have a minimal impact on the national totals for waste management . . . . On an individual facility basis, data users will know that the facility filing Form A for a PBT chemical has zero releases and between zero and 500 pounds of combined recycling, energy recovery, and treatment for destruction. In addition, data users will know that the facility has manufactured, processed or otherwise used the PBT chemical above the relevant thresholds and did not exceed the one-million-pound alternate threshold for Form A. EPA believes that this is an appropriate level of detail for public reporting . . . .

71 Fed. Reg. at 76938/2.

296. Thus, under the 2006 Regulations, Form A reporting is acceptable to EPA because "the Form A serves as a range report, which informs the public and other data users that other waste management of the PBT chemical is 500 pounds or less." *Response to Comments* at 79.

297.  EPA's assertions do not provide an adequate explanation of its reversal in position: why such "range reporting" on Form A was "insufficient for conducting analyses on PBT chemicals" and "virtually useless for communities interested in assessing risk" in 1999, but is an "appropriate level of detail for public reporting" for those communities and others in 2006.

298.  Nor does EPA's rationale respond in a reasoned way to the comments submitted to EPA on these issues.

299.  EPA's failure to explain why the reasons supporting its previous exclusion of PBT chemicals from Form A eligibility are no longer dispositive, and its failure to respond in a reasoned manner to the comments raising these issues, render the 2006 rulemaking arbitrary and capricious.

300.  Because this aspect of the 2006 rulemaking is arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

301.  In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the provisions of the Final Rule regarding covered PBT chemicals, and in particular 40 C.F.R. §§ 372.27(a)(2) and 372.95(b)(4)(ii).

302.  EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

303.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The

Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

### EIGHTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's failure to explain how it calculated the amounts of lost TRI reporting*
*for non-PBT chemicals*

304.  The Plaintiff States reallege and incorporate by reference paragraphs 1 through 303 in this claim for relief.

305.  Agency rulemaking is arbitrary and capricious if the agency has failed cogently to explain why it has exercised its discretion in a given manner, or the agency has failed to respond in a reasoned manner to significant comments received.

306.  In order to determine the overall percentage reduction in reporting for non-PBT chemicals that could result from the 2006 Regulations, EPA relied on nationwide calculations of reduction in the amounts of reported releases and other waste management quantities for each affected non-PBT chemical.

307.  A group of commenters asserted that EPA had not explained how it had calculated the figures for losses in reporting.  *Response to Comments* at 106.

308.  In response, EPA did not explain how it had calculated those figures.  *Response to Comments* at 106-07.

309.  EPA's failure to explain how it calculated the reporting loss estimates on which it relies to justify the 2006 Regulations, and its failure to respond in a reasoned manner to comments raising that issue, render the 2006 rulemaking arbitrary and capricious.

310.  Because this aspect of the 2006 rulemaking is arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

311.  In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the provisions of the Final Rule regarding non-PBT chemicals, and in particular 40 C.F.R. §§ 372.27(a)(1) and §§ 372.95(b)(4)(i).

312.  EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

313.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

## NINTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's failure to explain the astounding variation in its calculations of amounts of*
*lost TRI reporting for covered PBT chemicals*

314.  The Plaintiff States reallege and incorporate by reference paragraphs 1 through 313 in this claim for relief.

315.  Agency rulemaking is arbitrary and capricious if the agency has failed cogently to explain why it has exercised its discretion in a given manner, or if the agency has failed to respond in a reasoned manner to significant comments received.

316.  In order to determine the overall percentage reduction in reporting that could result from the new alternate reporting thresholds for covered PBT chemicals, EPA relied on calculations of reduction in the amounts of reported total production related waste that could result from the new thresholds.

317.  In the economic analysis for the Proposed Rule, EPA calculated an aggregate reporting loss of 12,855,836 pounds, or over 6,400 tons, of total production related waste for covered PBT chemicals.  *Economic Analysis (Proposed Rule)* at 5-4 (Table 5-1).

318.  In the economic analysis for the Final Rule, which did not vary from the Proposed Rule as regards covered PBT chemicals, EPA calculated an aggregate reporting loss of 83,129 pounds, or approximately 42 tons, of total production related waste for covered PBT chemicals. *Economic Analysis (Final Rule)* at 5-4 (Table 5-1).

319.  Thus, the reporting loss calculation for the Final Rule was approximately six-tenths of one percent of the reporting loss calculation for the identical Proposed Rule.

320.  EPA's reliance on such drastically different calculations for identical sets of reporting requirements in itself renders the covered PBT component of the 2006 rulemaking arbitrary and capricious.

321.  A group of commenters noted that EPA had not provided a chemical-by-chemical analysis of reporting losses for covered PBT chemicals for the Proposed Rule.  *Responses to Comments* at 78.

322.  EPA did provide a chemical-by-chemical analysis for covered PBT chemicals for the Final Rule, *see Economic Analysis (Final Rule)* at A-2, but did not explain how it calculated those chemical-by-chemical reporting losses.

323.  Nor did EPA provide any explanation as to why the two calculations of aggregate reporting loss for the same set of reporting requirements varied so drastically.

324.  Because EPA failed to explain how it performed the chemical-by-chemical calculations for the Final Rule, and failed to provide a chemical-by-chemical calculation for the analysis supporting the Proposed Rule, the Plaintiff States, and the public generally, are unable to determine why the two sets of calculations differ and whether the new chemical-by-chemical calculations used to support the final regulation are correct.

325.  Indeed, such different results suggest that EPA may have changed assumptions or methodologies between the Proposed Rule and the Final Rule, but without an explanation from EPA, it is not possible to know.

326.  EPA's failure to explain that drastic difference in the calculations, and more generally, its failure to explain the methodology – or change in methodology – for the two calculations, along with its failure to respond in a reasoned manner to comments by explaining its new calculations, render the 2006 Regulations arbitrary and capricious.

327.  Because this aspect of the 2006 rulemaking is arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

328.  In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the provisions of the Final Rule regarding covered PBT chemicals, and in particular 40 C.F.R. §§ 372.27(a)(2) and 372.95(b)(4)(ii).

329. EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens. Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

330. APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law. The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements. The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

## TENTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's improper consideration of burden reduction*

331. The Plaintiff States reallege and incorporate by reference paragraphs 1 through 330 in this claim for relief.

332. Agency rulemaking is arbitrary and capricious if the agency has relied on factors that Congress had not intended for the agency to consider, if the agency has changed a rule or policy without explaining why the original reasons for adopting the rule or policy are no longer dispositive, or if the agency has failed cogently to explain why it has exercised its discretion in a given manner.

333. EPA's principal purpose in promulgating the 2006 Regulations was "to reduce the reporting burden" for facilities subject to TRI reporting requirements. 70 Fed. Reg. at 57822/2; *see also id.* at 57825/2; 71 Fed. Reg. at 76932/1.

334.  Congress, however, did not intend for EPA to make burden reduction the predominant consideration when establishing "a threshold amount for a toxic chemical different from the amount established by [Congress]"  42 U.S.C. § 11023(f)(2).

335.  To the contrary, by statute, Congress provided that the purpose of TRI is:

> to provide information to the Federal, State, and local governments and the public, including citizens of communities surrounding covered facilities.  The release form shall be available . . . to inform persons about releases of toxic chemicals to the environment; to assist governmental agencies, researchers, and other persons in the conduct of research and data gathering; to aid in the development of appropriate regulations, guidelines and standards; and for other similar purposes.

42 U.S.C. § 11023(h).

336.  EPA has stated that TRI's "*overriding* purpose . . . is to provide government agencies, researchers, and local communities, with a comprehensive picture of toxic chemical releases and potential exposures to humans and ecosystems."  66 Fed. Reg. at 4506/2 (emphasis added).

337.  EPA has also stated that "[t]he entire concept of TRI . . . is founded on the belief that the public has the right to know about chemical use, release, and other waste management in the areas in which they live, as well as the hazards associated with these chemicals."  64 Fed. Reg. at 58677/1.

338.  Thus, TRI reporting requirements "should be construed *expansively* to require the collection of the *most* information permitted under the statutory language."  132 Cong. Rec. 29747 (1986) (comments of Rep. Edgar) (emphasis added).

339.  While EPCRA section 313(f)(2), 42 U.S.C. § 11023(f)(2), grants EPA authority to revise reporting thresholds through application of the substantial majority test, it does not authorize EPA to replace the statutory test with the goal of burden reduction.

340.    In fact, the plain language of section 313(f)(2) does not require, authorize or even mention reporting burden as a factor to be considered in revising reporting thresholds.  Instead, the only criterion referenced in section 313(f)(2) is whether the revision obtains reporting on a substantial majority of releases of the chemical at issue from facilities subject to section 313.

341.  In the preambles to the Proposed and Final Rules, EPA provides no legal authority supporting consideration of reporting burdens in revising TRI reporting thresholds.

342.  In the past, EPA has acknowledged that EPCRA does not require consideration of reporting burden in revising thresholds.  64 Fed. Reg. at 58676/2.

343.  Moreover, EPA has also acknowledged that "Congress made clear it *never* intended impacts on reporting facilities to outweigh the public's right-to-know about their potential exposures to toxic chemicals."  *Id.* at 58690/3 (emphasis added).

344.  Yet EPA's predominant rationale for promulgating the final 2006 rule is that the purported benefit from burden reduction outweighs the harm resulting from reduced reporting. *See*, *e.g.*, 71 Fed. Reg. at 76939/1.

345.  EPA not only relies on a factor, burden reduction, that is neither one of the statutory purposes of TRI reporting nor one of the statutory criteria for changing reporting thresholds under section 313(f)(2), it does so in direct contravention of the actual statutory goal of TRI reporting to provide as much information as possible regarding releases of toxic chemicals to federal, state and local governments and the public, including citizens of the local communities in which facilities using and discharging those toxic chemicals are located.

346.  EPA's reliance on the burden reduction factor in lieu of the "substantial majority" standard, contrary to Congress' intent and in contravention of the actual goals of TRI, EPA's unexplained reversal in policy as to whether burden reduction can outweigh the public's right-to-know, and EPA's failure cogently to explain why it is allowing impacts on reporting facilities to

outweigh the public's right to know, contrary to Congress' intent, render the 2006 rule arbitrary and capricious.

347.  Because this aspect of the 2006 rulemaking is arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

348.  In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the Final Rule, and in particular 40 C.F.R. §§ 372.27(a)(1) and (2) and §§ 372.95(b)(4)(i) and (ii).

349.  EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

350.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

## ELEVENTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's failure to explain why its burden estimates have varied dramatically since 2003*

351.  The Plaintiff States reallege and incorporate by reference paragraphs 1 through 350 in this claim for relief.

352.  Agency rulemaking is arbitrary and capricious if the agency has failed cogently to explain why it has exercised its discretion in a given manner, or if the agency has failed to respond in a reasoned manner to significant comments received.

353.  EPA has referenced several widely-varying estimates of TRI reporting burdens in the past few years.

354.  For example, in 2002-2003, EPA analyzed data from TRI reporting facilities and developed a revised estimate of 14.5 hours to perform necessary calculations and complete Form R.

355.  This revised represents a 69 percent reduction from the previous estimate of 47.1 hours.

356.  Nonetheless, EPA continued to use the 47.1 hour estimate.

357.  In 2004, EPA consultants performed an analysis of TRI reporting burdens and developed, on information and belief, a revised estimate of 23.95 hours to perform necessary calculations and complete Form R.

358.  This figure represents a 49 percent reduction from the previous estimate of 47.1 hours.

359.  Nonetheless, EPA used the 47.1-hour estimate for the proposed and final rules.

360.  A commenter noted that EPA had referenced several TRI burden estimates in recent years, queried if any of those number was accurate, and suggested that EPA should resolve the question of how to calculate reporting burdens and burden reduction before promulgating a rule premised on the magnitude of burden reduction.  *Response to Comments* at 149, 154.

361.  The commenter also suggested that EPA not proceed with the proposed rule until it explained why it had reached a "wide range" of burden estimates in the past, and why it was not using the newer estimates. *Response to Comments* at 154.

362.  EPA failed to respond to these comments in a reasoned manner.

363.  EPA did not address the 2003 estimates, and indicated that it might in the future consider any comments on the 2004 estimates that had been submitted during the rulemaking process, but otherwise just stated that it had based its burden reduction estimates for the rule on the oldest burden reduction estimates, which had been approved by OMB for the purposes of the Paperwork Reduction Act. *Response to Comments* at 155.

364.  EPA's failure to resolve the question of how to calculate reporting burdens, its failure to explain why the estimates that it relied on were better than the newer estimates, and its failure otherwise to respond in a reasoned manner to comments raising this issue, render the 2006 rulemaking arbitrary and capricious.

365.  Because this aspect of the 2006 rulemaking is arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

366.  In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the Final Rule, and in particular 40 C.F.R. §§ 372.27(a)(1) and (2) and §§ 372.95(b)(4)(i) and (ii).

367.  EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

368.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The

Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that

unlawful action.

### TWELFTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's failure to analyze whether its burden reduction estimates are accurate*

369.  The Plaintiff States reallege and incorporate by reference paragraphs 1 through 368

in this claim for relief.

370.  Agency rulemaking is arbitrary and capricious if the agency has failed cogently to

explain why it has exercised its discretion in a given manner, if the agency has failed to respond

in a reasoned manner to significant comments received, or if there are no findings or analysis to

justify  the choice the agency made nor any indication of the basis on which the agency

exercised its discretion.

371.  Even if reporting burden were a statutorily recognized factor, EPA's burden

reduction estimates are arbitrary, capricious and unreliable.

372.  Since reporting year 2001, EPA has made available to TRI reporting facilities a

software package known as "TRI-Made Easy" or "TRI-ME."

373.  "TRI-ME is an interactive, user-friendly software tool that guides facilities through

the TRI reporting process. . . .  TRI-ME facilitates the analysis needed to determine if a facility

must complete a Form A or Form R report for a particular chemical."  70 Fed. Reg. at 57826/1.

374.  More specifically, "TRI-ME leads prospective reporters interactively through a

series of questions that eliminate a good portion of the analysis required to determine whether a

facility needs to comply with the TRI reporting requirements, including the threshold

calculations needed to determine Form A eligibility."  U.S. Government Accountability Office,

*Environmental Information:  EPA Actions Could Reduce the Availability of Environmental Information to the Public* at 10, No. GAO-07-464T (Feb. 6, 2007).

375.  "EPA has made considerable progress in reducing burden associated with its various information collections through . . . implementing technology-based processes (*i.e.*, electronic reporting using the Toxics Release Inventory–Made Easy (TRI-ME) software and EPA's Central Data Exchange (CDX) . . . ).  These measures have reduced the time, cost, and complexity of existing environmental reporting requirements."  70 Fed. Reg. at 57825/2.

376.  "Approximately 90% of the roughly 84,000 Form R's filed in 2003 were prepared using the TRI-ME software."  *Id.* at 57826/1.

377.  A commenter noted that EPA did not factor into its analysis of burden reduction the extent to which electronic filing is reducing reporting burden independent of changes in reporting thresholds.  *Response to Comments* at 176.

378.  Another commenter suggested that EPA should perform an analysis of burden reduction taking into account TRI-ME to obtain more reliable and accurate figures.  *Id.* at 149.

379.  In response, EPA conceded that:

> [the] commenter correctly observed that increases in electronic filing through time is achieving burden reduction and that [EPA's] burden reduction estimates from the rule do not take this into account.  For example, the availability of TRI-ME reporting software is likely to assist and streamline the reporting process.  This could mean that [EPA's] Form R reporting cost estimates are overstated, and thus [EPA's] estimate of the cost savings associated with the [2006 Regulations] also could be overstated.

*Id.* at 176.

380.  Thus, EPA did not analyze to what extent its estimate of cost savings, *i.e.*, burden reduction, associated with the 2006 Regulations might have been significantly overstated

because it failed to consider that TRI reporting burdens may be much lower than EPA assumed due to the availability and widespread use of TRI-ME software and electronic filing.

381.  Numerous commenters noted that the burden reduction cost saving estimates were too high because the data collection burden is similar for both Form R and Form A.  *Id.* at 158-59.

382.  For example, one TRI reporting company explained that once a facility has collected all of the data needed to demonstrate entitlement to use Form A, the work needed to complete Form R is basically done.  The company noted that it has a policy of submitting only Form Rs based, in part, on the "insignificant difference in burden" between Form A and Form R.  *Id.* at 158.

383.  Another TRI reporting company similarly noted that most of the burden for its facilities is in determining eligibility, and that any burden reduction from expanded entitlement to use Form A would be "minimal."  *Id.* at 10.

384.  EPA responded to these comments by asserting that "facilities with releases and other waste management amounts *well below* the threshold for Form A may be spared the burden of detailed calculations each year to determine eligibility for Form A."  *Id.* at 159 (emphasis added).

385.  EPA did not analyze, however, what percentage of facilities entitled to file Form A by the 2006 rule might in fact be "well below" the threshold and thus might experience significant burden reduction on this rationale.

386.  EPA did not reduce the aggregate expected cost savings to reflect that, under its own rationale, only some unknown number – but not all – of the facilities entitled to file Form A might actually experience significant burden reduction from filing Form A.  Nor, in the alternative, did EPA explain why it was appropriate to assume the same large amount of cost

saving reduction for all such facilities when its rationale for such savings only applied to some uncertain percentage of those facilities.

387.  In addition, a group of commenters noted that the benefit reduction estimates for the Proposed Rule assumed a savings of $81 in recordkeeping/mailing costs for each Form A certification that replaced a full Form R report, even though recordkeeping and mailing costs would be comparable whether the facility submitted Form R or Form A.  *Response to Comments* at 156.

388.  EPA in fact stated that recordkeeping requirements would not change, 70 Fed. Reg. at 57841/1 (section entitled "Do My Recordkeeping Requirements Change?"); *id* at 57842/2 (same), and EPA provided no reason to believe that there would be any difference in mailing costs for Form A versus Form R.

389.  The economic analysis for the Final Rule continued to rely on an assumed savings in recordkeeping/mailing costs for facilities that switched from Form R to Form A, although in the slightly larger amount of approximately $87.  *Economic Analysis (Final Rule)* at 2-5 (Table 2-3).

390.  EPA did not explain why there would be such significant cost savings in recordkeeping/mailing costs in switching from Form R to Form A when it would appear that there would in fact be little or no such savings.

391.  As a result of failing to provide an explanation as to why there would be any savings in recordkeeping/mailing costs, EPA's cost savings estimates for non-PBT chemicals may be overstated by up to twenty-five percent.  Twenty-five percent equals $87, the purported savings in recordkeeping/mailing costs, divided by $351, where $351 represents EPA's $438 savings estimate minus the unjustified $87.

392.  For the same reason, EPA's cost savings estimates for covered PBT chemicals may be overstated by up to thirteen percent.  Thirteen percent equals $87, the purported savings in recordkeeping/mailing costs, divided by $661, where $661 represents EPA's $748 savings estimate minus the unjustified $87.

393.  In the preamble to the Proposed Rule, EPA noted that a large subset of the Form Rs for covered PBTs that might qualify for conversion to Form A – 2,085 out of 2,703 forms, or approximately 77 percent – reported zero releases and zero amounts of other waste management quantities.  70 Fed. Reg. at 57839/2.

394.  EPA stated that the burden for completing Form R for facilities that have zero releases and zero amounts of other waste management quantities was "small."  *Id.*

395.  If the burden for completing Form R for such facilities is "small" to begin with, any burden reduction from switching to Form A must also be small.

396.  In the preamble to the Final Rule, EPA used a cost saving estimate of $748, representing a burden reduction of 15.5 hours, for each Form A submitted instead of a Form R for a covered PBT chemical.  71 Fed. Reg. at 76942 (Table 1).

397.  This $748 burden reduction estimate that EPA used for covered PBTs represents a relatively large number, as EPA used a much smaller burden reduction figure – $438 – for non-PBT chemicals.  *Id.*

398.  A group of commenters pointed out that, given EPA's conclusion that the burden of completing Form R for the bulk of the facilities that might qualify to use Form A is "small," most of the facilities in this category would receive little burden reduction benefit from proposed change.  *Response to Comments* at 91.

399.  In response, EPA did not offer a reasoned explanation as to why it is using the full burden reduction amount of $748 for all qualifying forms for covered PBT chemicals when

approximately 77 percent of the qualifying forms would experience only a small burden reduction. *Id.*

400.  EPA's failure cogently to explain why it relied on these burden estimates notwithstanding their unreliability, EPA's failure to respond in a reasoned manner to comments raising these issues of unreliability, and EPA's failure to provide analysis addressing these issues, render the 2006 rulemaking arbitrary and capricious.

401.  Because these aspects of the 2006 rulemaking are arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

402.  In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the Final Rule, and in particular 40 C.F.R. §§ 372.27(a)(1) and (2) and §§ 372.95(b)(4)(i) and (ii).

403.  EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

404.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

## THIRTEENTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's failure to consider the 2006 Regulations' potential to weaken existing*
*incentives to reduce releases and other waste amounts of non-PBT chemicals*

405.  The Plaintiff States reallege and incorporate by reference paragraphs 1 through 404 in this claim for relief.

406.  Agency rulemaking is arbitrary and capricious if the agency has failed entirely to consider an important aspect of the problem, the agency has failed to respond in a reasoned manner to significant comments received, or if there are no findings or analysis to justify the choice that the agency made nor any indication of the basis on which the agency exercised its discretion.

407.  In the preamble to the Final Rule, EPA contended that the Final Rule, by revising the alternative reporting requirements for non-PBT chemicals to include a 2,000-pound threshold for releases, would create an incentive for facilities to reduce their releases beneath that threshold so that the facilities could file a Form A certification rather than provide full reporting on Form R.  71 Fed. Reg. at 76937/3.

408.  EPA claims that this incentive would further the national policy on pollution prevention set forth in PPA section 6602(b), 42 U.S.C. § 13101(b).  *Id.* at 76939/3.

409.  EPA did not, however, provide any data or analysis to demonstrate that this purported incentive will in fact result in reduced amounts of releases.

410.  It might in fact be the case that some, most or all facilities that would qualify to use Form A would find it easier and less burdensome to continue to file Form R rather than to change their operational or waste management practices to reduce their releases to less than 2,000 pounds.

411.  If that were the case, the purported incentive might have no effect, or a significantly smaller effect than EPA anticipated, on the amount of releases that facilities generate.

412.  Nor did EPA consider that the 2006 Regulations weaken or merely duplicate the preexisting incentive to reduce releases that arises from the obligation to disclose the amount of releases under TRI.

413.  Since TRI reporting requirements became effective in the late 1980s, facilities have often reduced the amounts of releases because they know that the amounts of their releases are public knowledge as a result of TRI and reducing them can improve their public images.

414.  That incentive to reduce releases applies to all facilities, whether they had more than 2,000 pounds of releases or less, so that a facility that had releases of 1,900 pounds of a TRI chemical would have an incentive to reduce those releases to zero pounds to create better goodwill in its community and beyond.

415.  EPA's decision to allow facilities with releases of less than 2,000 pounds not to report the amount of their releases eliminates the incentive for such facilities to reduce their releases.

416.  A facility that in the past might have reduced its releases of a non-PBT chemical from 1,900 pounds to zero pounds to create better goodwill would no longer have an incentive to do so, since it could simply maintain its existing level of releases, file Form A and thus not report the amount of its releases.

417.  In addition, the new 2,000 pound threshold might induce some facilities to increase their releases to save production costs, to increase production or for other reasons.

418.  A facility that might in the past have reduced its releases to zero pounds to create better goodwill in its community might now increase its releases to 1,900 pounds.

419.  If the facility could and did use Form A certification, the community would never know about that increase, since Form A certification, unlike Form R reporting, does not distinguish between zero releases and 1,900 pounds of releases.

420.  Through the 2006 Regulations, EPA purports to create a new incentive to reduce releases, but it has not considered whether those regulations have either weakened an existing incentive to reduce releases or created an incentive to increase releases.  Thus, EPA has not adequately analyzed whether, given these countervailing incentives, the Final Rule will in fact, on balance, increase incentives to reduce releases.

421.  Moreover, as noted in paragraphs 413-414 above, even before the 2006 Regulations were promulgated, facilities with releases greater than 2,000 pounds already had a preexisting incentive to reduce their releases beneath 2,000 pounds to create better goodwill in their communities and beyond.

422.  EPA has not considered whether the possibility of being able to submit a Form A certification rather than a full Form R report will provide sufficient additional incentive – over and above the preexisting incentive – to induce more facilities with releases over 2,000 pounds to reduce their releases beneath 2,000 pounds.

423.  Incentive arguments analogous to those discussed in paragraphs 407-422 would also apply to EPA's decision in the 2006 Regulations to raise the ARA from 500 pounds to 5,000 pounds.

424.  Thus, facilities that previously had an incentive to reduce their ARA waste quantities to less than 500 pounds no longer have that threshold incentive (the previous 500-pound threshold being replaced by the new 5,000-pound threshold); facilities that previously kept their ARA waste quantity to less than 500 pounds to avoid filing Form R might now increase it to almost 5,000 pounds; and given the preexisting incentive to reduce ARA waste

quantities to less than 5,000 pounds to create better goodwill, the purported new, additional incentive to reduce ARA waste quantities to less than 5,000 pounds resulting from the new 5,000-pound reporting threshold might not in fact be sufficient to induce additional facilities to make such reductions.

425.  EPA has not analyzed the interplay between any pre-existing incentive to reduce waste amounts to less than 500 pounds and any new incentive to reduce waste amounts to less than 5,000 pounds.

426.  Thus, EPA has failed to consider whether the new regulations will in fact increase, rather than decrease, the amount of releases and other waste amounts of TRI chemicals that facilities generate.

427.  As a result, it has not analyzed whether the 2006 Regulations impede, rather than advance, the national pollution prevention policy set out in PPA section 6602(b), 42 U.S.C. § 13101(b).

428.  EPA's failure to consider this important aspect of the problem, its failure to provide analysis justifying the choice it made, and its failure to respond in a reasoned manner to comments raising this issue, render the 2006 rulemaking arbitrary and capricious.

429.  Because this aspect of the 2006 rule is arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

430.  In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the provisions of the Final Rule regarding non-PBT chemicals, and in particular 40 C.F.R. §§ 372.27(a)(1) and 372.95(b)(4)(i).

431.  EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their

affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that

facilities continue to provide more comprehensive information about their use, releases and other

waste management quantities of TRI chemicals.

432.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of

injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have

no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The

Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that

unlawful action.

## FOURTEENTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's failure to consider the 2006 Regulations' potential to weaken existing incentives to*
*reduce waste management amounts and use of covered PBT chemicals*

433.  The Plaintiff States reallege and incorporate by reference paragraphs 1 through 432

in this claim for relief.

434.  Agency rulemaking is arbitrary and capricious if the agency has failed entirely to

consider an important aspect of the problem, the agency has failed to respond in a reasoned

manner to significant comments received, or if there are no findings or analysis to justify the

choice that the agency made nor any indication of the basis on which the agency exercised its

discretion.

435.  In the preamble to the Proposed Rule, EPA contended that the Proposed Rule would

create an incentive for facilities to reduce their waste management quantities other than releases

beneath the 500-pound PRA threshold so that the facilities could file a Form A certification

rather than provide full reporting on Form R.  70 Fed. Reg. at 57838/2.

436.  EPA claims that this incentive would further the national policy on pollution prevention set forth in PPA section 6602(b), 42 U.S.C. § 13101(b).  *Id.*

437.  In response to EPA's argument that the new alternate reporting requirements for covered PBT chemicals would create incentives to reduce waste management quantities other than releases, a group of commenters asserted that EPA had not evaluated the extent to which the proposed changes could weaken pre-existing incentives to reduce use and waste management quantities of TRI chemicals.  *Response to Comments* at 89-90.

438.  EPA did not, however, reply with any data or analysis to demonstrate that the purported incentive upon which it relied will in fact result in reduced amounts of waste management quantities other than releases.

439.  It might in fact be the case that some, most or all facilities that would qualify to use Form A would find it easier and less burdensome to continue to file Form R rather than to change their operational or waste management practices to reduce their PRA to less than 500 pounds.

440.  If that were the case, the purported incentive might have no effect, or a significantly smaller effect than EPA anticipated, on the amount of waste management quantities other than releases that facilities generate.

441.  Nor did EPA consider the extent to which the 2006 Regulations weaken or merely duplicate the preexisting incentive to reduce waste management quantities other than releases that arises from the obligation to disclose the amount of releases under TRI.

442.  Since TRI reporting requirements became effective in the late 1980s, facilities have had an incentive to reduce the amounts of other waste management quantities because they know that such amounts are public knowledge as a result of TRI, and reducing them can improve their public image.

443.  That pre-existing incentive to reduce other waste management quantities applies to all facilities, whether they had more than 500 pounds of waste management quantities or less, so that a facility that had a total waste management quantity of 450 pounds of a TRI chemical would have an incentive to reduce that release to zero pounds to create better goodwill in its community and beyond.

444.  EPA's decision to allow facilities with a PRA of less than 500 pounds not to report the amount of their other waste management quantities eliminates the incentive for such facilities to reduce their other waste management quantities.

445.  A facility that might in the past have reduced its waste management quantities of a covered PBT chemical from 450 pounds to zero pounds to create better goodwill would no longer have an incentive to do so, since it could simply maintain its existing level of waste management quantities, file Form A and thus not report the amount of its waste management quantities.

446.  In addition, the new 500-pound threshold might induce some facilities to increase their waste management quantities.

447.  A facility that might in fact already have reduced its waste management quantities to zero pounds to create better goodwill in its community might now increase them to 450 pounds to save production costs, to increase production or for other reasons.

448.  If the facility could and did use Form A certification, the community would never know about that increase, since Form A certification, unlike Form R reporting, does not distinguish between zero waste management quantities and 450 pounds of waste management quantities.

449.  Through the 2006 Regulations, EPA purports to create a new incentive to reduce waste management quantities, but it has not considered whether it has weakened an existing

incentive to reduce waste management quantities or created an incentive to increase waste management quantities. Thus, EPA has not adequately analyzed whether, given these countervailing incentives, the Final Rule will in fact, on balance, increase incentives to reduce other waste management quantities.

450. Moreover, as noted in paragraphs 442-443 above, even before the 2006 Regulations were promulgated, facilities with waste management quantities greater than 500 pounds already had a pre-existing incentive to reduce their waste management quantities beneath 500 pounds to create better goodwill in their communities.

451. EPA has not considered whether the possibility of being able to submit a Form A certification rather than a full Form R report will provide sufficient additional incentive – over and above the preexisting incentive – to induce more facilities with waste management quantities over 500 pounds to reduce those quantities beneath 500 pounds.

452. Incentive arguments analogous to those in paragraphs 435-451 would also apply to EPA's decision in the 2006 Regulations to create an alternative use threshold of 1 million pounds for covered PBT chemicals, when previously the only applicable use thresholds for those chemicals were 10 pounds or 100 pounds.

453. Thus, facilities that previously had an incentive to reduce their use of covered PBT chemicals to less than 10 or 100 pounds no longer have that threshold incentive (those two thresholds being replaced by the 1 million-pound threshold); facilities that previously kept their use of a covered PBT chemical to less than 10 or 100 pounds to avoid filing Form R might now increase it to almost 1 million pounds; and given the preexisting incentive to reduce use of the covered PBT chemical to less than 10 or 100 pounds to create better goodwill, any purported new, additional incentive to reduce use to less than 1 million pounds resulting from the new

1 million-pound use threshold might not in fact be sufficient to induce additional facilities to make such reductions.

454.  Indeed, under the Final Rule, a facility that had previously decided not to use covered PBT chemicals might be more inclined to use them now if that were economically advantageous, since previously the facility could not use more than 10 or 100 pounds of the chemical without having to file Form R, while now the facility might be able to use up to 1 million pounds without having to file Form R.

455.  EPA has not analyzed the interplay between any pre-existing incentive to reduce use amounts and any new incentive to reduce use amounts to less than 1 million pounds.

456.  Thus, EPA has failed to consider whether the new regulations will in fact increase, rather than decrease, (a) the amount of waste management quantities of covered PBT chemicals that facilities generate, and (b) the amount of such chemicals that facilities use.

457.  As a result, it has not analyzed whether the 2006 Regulations impede, rather than advance, the national policy of pollution prevention policy set out in PPA section 6602(b), 42 U.S.C. § 13101(b).

458.  EPA's failure to consider this important aspect of the problem, its failure to provide analysis justifying the choice it made, and its failure to respond in a reasoned manner to comments raising this issue, render the 2006 rulemaking arbitrary and capricious.

459.  Because this aspect of the 2006 rulemaking is arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

460.  In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the provisions of the Final Rule regarding covered PBT chemicals, and in particular 40 C.F.R. §§ 372.27(a)(2) and 372.95(b)(4)(ii).

461. EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens. Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

462. APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law. The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements. The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

## FIFTEENTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's irrelevant and unreliable conclusion that the Final Rule represents an appropriate*
*"balance" between burden reduction and the intended purposes of TRI*

463. The Plaintiff States reallege and incorporate by reference paragraphs 1 through 462 in this claim for relief.

464. Agency rulemaking is arbitrary and capricious if the agency has failed cogently to explain why it has exercised its discretion in a given manner, if the agency has relied on factors that Congress had not intended for the agency to consider, if the agency has changed a rule or policy without explaining why the original reasons for the rule or policy are no longer dispositive, or if there are no findings or analysis to justify the choice the agency made nor any indication of the basis on which the agency exercised its discretion.

465. In the preamble to the Final Rule, EPA justifies the revised alternative reporting requirements for TRI chemicals by reference to a balancing test.

466.  With regard to non-PBT chemicals, EPA asserts that the Final Rule "appropriately balances the paperwork burdens of reporting against the promotion of pollution prevention and the requirement to provide the public and other data users with valuable information that is consistent with the goals and statutory purposes of the TRI program."  71 Fed. Reg. at 76940/1; *see also Response to Comments* at 22.

467.  Similarly, with regard to covered PBT chemicals, EPA asserts that the Final Rule "strikes an appropriate balance between paperwork burden and the provision of valuable information consistent with the goals and statutory purposes of the TRI program."  71 Fed. Reg. at 76939/1.

468.  Because EPA's "balancing" test is nowhere set forth in the statute and relies on a factor Congress did not intend for EPA to consider, namely, burden reduction, the test is contrary to law and arbitrary and capricious.

469.  Even if EPA's "balancing" test were a legitimate legal standard, however, EPA's application of the test is unreliable.

470.  While EPA states that the Final Rule represents an "appropriate balance," EPA never sets out any criteria for determining why the amounts that EPA selected for reporting thresholds represent more appropriate "balances" of the factors that EPA considered than other threshold amounts.

471.  EPA's conclusion that the Final Rule provides an "appropriate balance" relies on EPA's estimates of reporting losses, but, as noted in paragraphs 206-230, 305-309 and 315-326 above, EPA's estimates of reporting losses are unreliable.

472.  EPA's conclusion that the Final Rule provides an "appropriate balance" relies on its burden reduction estimates, but, as noted in paragraphs 352-364 and 370-400 above, EPA has

not analyzed a number of factors that could significantly affect its burden reduction estimates, and thus those estimates are unreliable.

473.  EPA's conclusion that the Final Rule provides an "appropriate balance" also relies on its assertions regarding incentives for reduction in releases, waste quantities and use of TRI chemicals, but, as noted in paragraphs 406-428 and 434-458 above, EPA has not fully analyzed the incentive effects of the Final Rule, and thus its assertions regarding incentive effects are unreliable.

474.  Because EPA relied on potentially unreliable estimates of reporting losses, incentive effects and burden reduction in applying its "balance" test, its conclusion that the Final Rule represents an "appropriate balance" between burden reduction and the purposes of TRI is arbitrary and capricious.

475.  Moreover, as regards one of the covered PBT chemicals, lead, which is a potent neurotoxin and in particular interferes with the proper development of the nervous system of infants and children, EPA concluded in the 2006 Regulations that the "appropriate balance" of burden and informational concerns was to allow Form A certification for facilities that do not exceed a 1,000,000-pound use threshold, a 500-pound ARA threshold and a zero-pound release threshold.  71 Fed. Reg. at 76939/1.

476.  That 2006 conclusion is directly contrary to EPA's 2001 conclusion that the "appropriate balance" of those concerns was that no facilities should be allowed to use Form A for lead, and that all facilities that use more than 100 pounds of lead must report on Form R.  66 Fed. Reg. at 4530/3.

477.  Thus, in 2001 EPA determined that a facility that used 110 pounds of lead and generated no lead waste *was not* entitled to file a Form A and had to file Form R, but in 2006

EPA determined that a facility that uses 990,000 pounds of lead and generates 450 pounds of lead waste *was* entitled to file a Form A and did not have to file Form R.

478.  EPA has provided no reasoned explanation as to why the "appropriate balance" is no longer what EPA declared it to be in 2001.

479.  EPA's failure to provide a reasoned explanation on these points renders the 2006 rulemaking arbitrary and capricious.

480.  Because these aspects of the 2006 rule are arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

481.  In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the Final Rule, and in particular 40 C.F.R. §§ 372.27(a)(1) and (2) and §§ 372.95(b)(4)(i) and (ii).

482.  EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

483.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

## SIXTEENTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's failure to consider the potential for adverse health and environmental impacts*
*should the 2006 Regulations increase the amount of releases of non-PBT chemicals*

484.   The Plaintiff States reallege and incorporate by reference paragraphs 1 through 483 in this claim for relief.

485.   Agency rulemaking is arbitrary and capricious if the agency has failed entirely to consider an important aspect of the problem, or the agency has failed to respond in a reasoned manner to significant comments received.

486.   Commenters expressed concern that reduced TRI reporting resulting from the Proposed Rule would result in increased releases and, as a result, increased adverse impacts on the environment and human health.  *See*, *e.g.*, *Response to Comments* at 15, 18.

487.   EPA responded that it did not believe that the rule would cause such negative impacts because the rule would encourage facilities to reduce their releases.  *Response to Comments* at 16, 19.

488.   Because, as noted in paragraphs 406-428 above, EPA improperly failed to consider whether the new regulations might increase, rather than decrease, releases of non-PBT chemicals, which include chemicals known to cause brain, blood, respiratory and developmental problems, EPA also failed to consider the extent to which such increased releases, if any, arising from the new regulations might cause adverse impacts on the environment and human health.

489.   EPA's failure to consider this important aspect of the problem, and its failure to respond in a reasoned manner to comments raising this issue, render the 2006 rulemaking arbitrary and capricious.

490.  Because this aspect of the 2006 rulemaking is arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

491.  In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the provisions of the Final Rule regarding non-PBT chemicals, and in particular 40 C.F.R. §§ 372.27(a)(1) and 372.95(b)(4)(i).

492.  EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

493.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

## SEVENTEENTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A)*
*Arbitrary and capricious rulemaking -*
*EPA's failure cogently to explain its reasons for allowing carcinogens*
*to be subject to the new, less stringent, alternate reporting requirements*
*for non-PBT chemicals*

494.  The Plaintiff States reallege and incorporate by reference paragraphs 1 through 493 in this claim for relief.

495.  Agency rulemaking is arbitrary and capricious if the agency has failed cogently to explain why it has exercised its discretion in a given manner, or the agency has failed to respond in a reasoned manner to significant comments received.

496.  Under the Final Rule, the alternative reporting thresholds for non-PBT chemicals are less stringent that the alternative reporting thresholds for covered PBT chemicals.

497.  Numerous known or suspected carcinogens, including, for example, 2,6-TDI, are non-PBT chemicals and are therefore subject under the Final Rule to the less stringent alternate reporting thresholds for those chemicals.

498.  Commenters asked why EPA was establishing less stringent reporting thresholds for the carcinogens than for the covered PBT chemicals.  *Response to Comments* at 146.

499.  In its response, EPA acknowledged that the non-PBT chemicals had "varying toxicities."  *Id.* at 147.

500.  EPA did not, however, either (a) explain why it was appropriate to have less stringent thresholds for the carcinogenic non-PBT chemicals than for the covered PBT chemicals, or (b) revise the rule so that the same reporting thresholds applied to both the carcinogenic non-PBT chemicals and the covered PBT chemicals.

501.  Instead, EPA merely stated that it was adding the 2,000 pound release threshold for all non-PBT chemicals.  *Id.*

502.  EPA's failure adequately to explain why it is allowing the carcinogens to be subject to the less stringent reporting requirements than covered PBT chemicals, and its failure to respond in a reasoned manner to comments raising that issue, render the 2006 rulemaking arbitrary and capricious.

503. Because this aspect of the 2006 rulemaking is arbitrary and capricious, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated the law in this actual controversy.

504. In addition, APA section 706(2)(A), 5 U.S.C. § 706(2)(A), gives this Court the power to hold unlawful and set aside the provisions of the Final Rule regarding non-PBT chemicals, and in particular 40 C.F.R. §§ 372.27(a)(1) and 372.95(b)(4)(i).

505. EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens. Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

506. APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law. The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements. The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

## EIGHTEENTH CLAIM FOR RELIEF

*5 U.S.C. § 706(2)(A) & (C)*
*Violations of EPCRA Section 328*

507. The Plaintiff States reallege and incorporate by reference paragraphs 1 through 506 in this claim for relief.

508. EPA asserts that it is promulgating the Final Rule under the authority of EPCRA section 328, 42 U.S.C. § 11048, as well as under the authority of EPCRA section 313(f)(2), 42 U.S.C. § 11023(f)(2). 71 Fed. Reg. at 76932/3.

509.  Section 328 authorizes EPA to "prescribe such regulations as may be necessary to carry out [EPCRA.]"  42 U.S.C. § 11048.

510.  Section 328 does not, however, authorize EPA to promulgate regulations that are: contrary to other EPCRA requirements, including those found in section 313(f)(2); in excess of statutory authority or limitations, including the authority and limitations found in section 313(f)(2); or arbitrary and capricious.

511.  In promulgating the 2006 rule, EPA did not satisfy the section 328 standard.

512.  EPA did not demonstrate, or even attempt to demonstrate, in the administrative record that the 2006 rule was "necessary" to carry out EPCRA.

513.  In fact, EPCRA operated successfully for years without the new alternative reporting requirements set forth in the Final Rule.

514.  Since, as set out in paragraphs 141-506 above, the Final Rule is contrary to EPCRA section 313(f)(2), in excess of the statutory authority and limitations set out in section 313(f)(2), and arbitrary and capricious, EPCRA section 328 does not give EPA authority to promulgate the Final Rule.

515.  APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration in this actual controversy that the Final Rule is not in accordance with law and is in excess of statutory authority and limitations.

516.  In addition, APA sections 706(2)(A) and (C), 5 U.S.C. §§ 706(2)(A) & (C), give this Court the power to hold unlawful and set aside the Final Rule, and in particular 40 C.F.R. §§ 372.27(a)(1) and (2), and §§ 372.95(b)(4)(i) and (ii).

517.  EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new, less stringent alternative reporting thresholds and

thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

518.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

<u>NINETEENTH CLAIM FOR RELIEF</u>

*5 U.S.C. § 706(2)(A) & (C)*
*Failure to provide notice required under APA § 553(b) -*
*absence of notice of the 2,000 pound threshold for releases*

519.  The Plaintiff States reallege and incorporate by reference paragraphs 1 through 518 in this claim for relief.

520.  Pursuant to APA section 553(b), EPA must provide notice of proposed rulemaking, and in particular must provide "either the terms or substance of the proposed rule or a description of the subjects and issues involved."  5 U.S.C. § 553(b).

521.  Such notice "must be sufficient to fairly apprise interested parties of the issues involved, so that they may present responsive data or argument relating thereto."  Sen. Doc. No. 248, 79th Cong. 2d Sess. 200 (1946).

522.  The Proposed Rule gave no indication that the final alternate reporting requirements for non-PBT chemicals would include a 2,000-pound threshold for releases.

523.  EPA's failure to provide notice of that threshold for releases prejudiced the Plaintiff States, since the failure to provide notice prevented the Plaintiff States from making arguments, including without limitation arguments the same as, or analogous to, those set out in paragraphs 142-153, 159-180, 186-200, 206-213, 223-229, 268-270 and 274-278 above, that might have

succeeded in reducing the 2,000 pound threshold, and had those arguments succeeded, fewer facilities would be able to avoid reporting release quantities and other information.

524.  As a result, APA section 703, 5 U.S.C. § 703, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), entitle the Plaintiff States to a declaration that EPA has violated 5 U.S.C. § 553(b) in this actual controversy.

525.  In addition, APA sections 706(2)(A) and (C), 5 U.S.C. §§ 706(2)(A) & (C), give this Court the power to hold unlawful and set aside the provisions of the Final Rule regarding non-PBT chemicals, and in particular 40 C.F.R. §§ 372.27(a)(1) and 372.95(b)(4)(i).

526.  EPA's violation of the APA has injured and continues to injure the Plaintiff States and their affected citizens.  Relief in this action would benefit the Plaintiff States and their affected citizens by invalidating the new alternative reporting thresholds and thereby ensure that facilities continue to provide more comprehensive information about their use, releases and other waste management quantities of TRI chemicals.

527.  APA sections 702 and 703, 5 U.S.C. §§ 702 & 703, authorize the award of injunctive relief for EPA's violations of law.  The Plaintiff States and their affected citizens have no adequate remedy at law for EPA's unlawful weakening of TRI reporting requirements.  The Plaintiff States and their affected citizens continue to suffer irreparable injury as a result of that unlawful action.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff States respectfully request that this Court enter a judgment:

1.  Declaring that the Final Rule violates EPCRA sections 313(f)(2) and 328, 42 U.S.C. §§ 11023(f)(2) & 11048, PPA sections 6607(a)-(c), 42 U.S.C. § 13106(a)-(c), and APA sections 553(b), 706(2)(A) and (C), 5 U.S.C. §§ 553(b), 706(2)(A) & (C);

2.  Vacating the Final Rule, and in particular vacating those provisions of 40 C.F.R.

§§ 372.27 and 327.95 that were amended by the Final Rule;

3.  Ordering EPA to publish in the Federal Register a notice sufficient to inform entities

subject to TRI reporting requirements that the Final Rule has been vacated and that the TRI

reporting requirements in effect prior to January 22, 2007 will again be in effect;

4.  Awarding the Plaintiff States their costs of litigation pursuant to Fed. R. Civ. P. 54 or

any other appropriate authority; and

5.  Granting the Plaintiff States such other relief as the Court deems just and proper.

Dated:   November 28, 2007

Respectfully submitted,

ANDREW M. CUOMO,
ATTORNEY GENERAL OF
THE STATE OF NEW YORK

By:  /s/  Andrew G. Frank
     Andrew G. Frank
     Assistant Attorney General
     New York State Office of the Attorney General
     120 Broadway
     New York, New York  10271
     (212) 416-8446

*Counsel for Plaintiff State of New York*

TERRY GODDARD,
ATTORNEY GENERAL OF
THE STATE OF ARIZONA


By: /s/ James T. Skardon/AGF
      James T. Skardon[*]
      Assistant Attorney General
      Arizona Office of the Attorney General
      1275 West Washington Street
      Phoenix, Arizona 85007
      (602) 542-8535


*Counsel for Plaintiff State of Arizona*


EDMUND G. BROWN JR.,
ATTORNEY GENERAL OF
THE STATE OF CALIFORNIA


By: /s/ James R. Potter/AGF
      James R. Potter[*]
      Deputy Attorney General
      California Office of the Attorney General
      300 South Spring Street
      Los Angeles, California 90013-1230
      (213) 897-2637


*Counsel for Plaintiff State of California*

---

[*] Motion for admission *pro hac vice* to be filed shortly after filing of complaint.

RICHARD BLUMENTHAL
ATTORNEY GENERAL OF
THE STATE OF CONNECTICUT

By:  /s/  Mary K. Lenehan/AGF
      Mary K. Lenehan[*]
      Matthew Levine
      Assistant Attorneys General
      Connecticut Office of the Attorney General
      55 Elm Street, P.O. Box 120
      Hartford, Connecticut  06141-0120
      (860) 808-5250

*Counsel for Plaintiff State of Connecticut*

LISA MADIGAN
ATTORNEY GENERAL OF
THE STATE OF ILLINOIS

By:  /s/  Gerald T. Karr/AGF
      Gerald T. Karr[*]
      Senior Assistant Attorney General
      Illinois Attorney General's Office
      69 West Washington Street, Suite 1800
      Chicago, Illinois  60602
      (312) 814-3369

*Counsel for Plaintiff State of Illinois*

---

[*] Motion for admission *pro hac vice* to be filed shortly after filing of complaint.

G. STEVEN ROWE
ATTORNEY GENERAL OF
THE STATE OF MAINE

By: /s/ Janet M. McClintock/AGF
      Janet M. McClintock[*]
      Assistant Attorney General
      Maine Office of the Attorney General
      6 State House Station
      Augusta, Maine  04333-0006
      (207) 626-8566

*Counsel for Plaintiff State of Maine*


MARTHA COAKLEY
ATTORNEY GENERAL OF
THE COMMONWEALTH OF MASSACHUSETTS

By: /s/ I. Andrew Goldberg/AGF
      I. Andrew Goldberg
      Assistant Attorney General
      Massachusetts Office of the Attorney General
      One Ashburton Place
      Boston, Massachusetts  02108
      (617) 727-2200

*Counsel for Plaintiff Commonwealth of Massachusetts*

---

[*] Motion for admission *pro hac vice* to be filed shortly after filing of complaint.

LORI SWANSON
ATTORNEY GENERAL OF
THE STATE OF MINNESOTA

By:  /s/  Carla Heyl/AGF
     Carla Heyl[*]
     Assistant Attorney General
     Minnesota Office of the Attorney General
     900 Bremer Tower
     445 Minnesota Street
     St. Paul, Minnesota  55101
     (651) 296-7341

*Counsel for Plaintiff State of Minnesota*

KELLY A. AYOTTE
ATTORNEY GENERAL OF
THE STATE OF NEW HAMPSHIRE

By:  /s/  Maureen D. Smith/AGF
     Maureen D. Smith[*]
     Senior Assistant Attorney General
     New Hampshire Office of the Attorney General
     33 Capitol Street
     Concord, New Hampshire  03301-6397
     (603) 223-6270

*Counsel for Plaintiff State of New Hampshire*

---

[*] Motion for admission *pro hac vice* to be filed shortly after filing of complaint.

ANNE MILGRAM
ATTORNEY GENERAL OF
THE STATE OF NEW JERSEY

By: /s/ Michael Schuit/AGF
    Michael Schuit[*]
    Deputy Attorney General
    New Jersey Office of the Attorney General
    Richard J. Hughes Justice Complex
    25 Market Street, P.O. Box 093
    Trenton, New Jersey  08625-0093
    (609) 633-8109

*Counsel for Plaintiff State of New Jersey*

SUSAN SHINKMAN
CHIEF COUNSEL, COMMONWEALTH OF
PENNSYLVANIA, DEPARTMENT OF
ENVIRONMENTAL PROTECTION

By: /s/ Robert A. Reiley/AGF
    Robert A. Reiley[*]
    Assistant Counsel
    Pennsylvania Department of Environmental Protection
    400 Market Street
    Harrisburg, Pennsylvania  17105
    (717) 787-0478

*Counsel for Plaintiff Commonwealth of Pennsylvania,*
*Department of Environmental Protection*

---

[*] Motion for admission *pro hac vice* to be filed shortly after filing of complaint.

WILLIAM H. SORRELL
ATTORNEY GENERAL OF
THE STATE OF VERMONT

By: /s/ Kevin O. Leske/AGF

    Kevin O. Leske[*]
    Assistant Attorney General
    Vermont Office of Attorney General
    109 State Street
    Montpelier, Vermont 05609-1001
    (802) 828-6902

*Counsel for Plaintiff State of Vermont*

---

[*] Motion for admission *pro hac vice* to be filed shortly after filing of complaint.

## APPENDIX A

## ACRONYMS

2,6-TDI        toluene-2,6-diisocyanate

APA            Administrative Procedure Act, 5 U.S.C. §§ 701-706

ARA            annual reportable amount

EPCRA          Emergency Preparedness and Community Right-to-Know Act, 42 U.S.C.

               §§ 11001-11050

NYS DEC        New York State Department of Environmental Conservation

PBT            persistent, bioaccumulative and toxic

PPA            Pollution Prevention Act, 42 U.S.C. §§ 13101-13109

PRA            PBT reporting amount

TRI:           Toxics Release Inventory